(No. 64917.—

PATRICIA HINTHORN, Appellee, v. ROLAND'S OF BLOOMINGTON, INC., Appellant.

*Opinion filed February 11, 1988.*

Donald W. Wilcox, Jr., of Thomson & Weintraub, of Bloomington, for appellant.

Strodel, Kingery & Durree, Assoc., of Peoria (James R. Carter, of counsel), for appellee.

JUSTICE SIMON delivered the opinion of the court:

On September 6, 1985, plaintiff, Patricia Hinthorn, filed a complaint in the circuit court of McLean County against her previous employer, Roland's of Bloomington, Inc. (Roland's), alleging that she had been discharged in retaliation for asserting her rights to medical attention for a work-related injury. The complaint was dismissed with prejudice by the trial court for failure to state a cause of action for retaliatory discharge. The appellate court reversed and remanded, finding the complaint "barely sufficient to state a cause of action." (151 Ill. App. 3d 1006, 1009.) We allowed Roland's appeal pursuant to Supreme Court Rule 315(a). 107 Ill. 2d R. 315(a).

According to the complaint, plaintiff was working as a clerk in the shipping department of Roland's on Friday, February 8, 1985, when she suffered a back injury on the job. She had suffered two previous injuries at work during the preceding 12 months, had sought medical attention for those injuries, and had made claims for her medical bills under the Illinois Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*). On Monday, February 11, 1985, plaintiff reported her back injury to her supervisor and requested medical attention. The supervisor instructed plaintiff to meet with the company's vice-president.

Plaintiff met with the vice-president the same day and informed him that she was in pain, required medical attention, and wished to seek such medical attention. The vice-president responded by telling plaintiff that she should seek other employment. He told plaintiff that she had been "getting hurt too much—costing the company too much money," while directing her to sign a "Volun-

tary Resignation" form. The vice-president said that by signing the form, plaintiff would be able to leave her employment with Roland's under her own free will. Although plaintiff did not fully understand the meaning of the "Voluntary Resignation" form, she understood that she would lose her job if she did not sign it. Plaintiff then signed the form.

This court first recognized a cause of action for retaliatory discharge in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, in which an employer fired an employee after she filed a workers' compensation claim for a work-related injury. To ensure that the sound public policy underlying the Workers' Compensation Act could not be frustrated by the actions of an employer, the court held that the tort of retaliatory discharge should exist. (*Kelsay*, 74 Ill. 2d at 181.) A plaintiff states a valid claim for retaliatory discharge only if she alleges that she was (1) discharged; (2) in retaliation for her activities; and (3) that the discharge violates a clear mandate of public policy. (*Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 529.) Mindful that on a motion to dismiss, all the allegations of the complaint, as well as all reasonable inferences therefrom, must be regarded as true (*Katz v. Belmont National Bank* (1986), 112 Ill. 2d 64, 67; *Mein v. Masonite Corp.* (1985), 109 Ill. 2d 1, 7), we will examine each of these elements in turn.

Appellant contends that because plaintiff signed a "Voluntary Resignation" form, plaintiff was not "discharged" within the meaning of the retaliatory discharge concept and therefore can state no claim for retaliatory discharge. The appellate court wrestled with this issue, noting that the trial court relied heavily on *Scheller v. Health Care Service Corp.* (1985), 138 Ill. App. 3d 219, in dismissing the complaint. In *Scheller*, the plaintiff alleged that she had been severely harassed by her employer, and that this harassment caused her to resign.

Plaintiff claimed that resignation under such circumstances amounted to a constructive discharge, making her employer liable to a claim for retaliatory discharge. (See *Beye v. Bureau of National Affairs* (1984), 59 Md. App. 642, 477 A.2d 1197 (recognizing "constructive discharge" as actionable element of a retaliatory discharge claim).) Relying on the language in *Barr v. Kelso-Burnett* (1985), 106 Ill. 2d 520, stating that the supreme court " 'does not "strongly support" the expansion of the [retaliatory discharge] tort,' " the appellate court refused to extend the tort to include situations in which the plaintiff has been only constructively, not actually, discharged. *Scheller*, 138 Ill. App. 3d at 225, quoting *Barr*, 106 Ill. 2d at 525.

The appellate court here distinguished the facts of this case from those in *Scheller*. In *Scheller* the plaintiff admitted resigning voluntarily in response to the employer's actions. In the present case plaintiff did not claim that she was driven by the employer's actions to voluntarily resign, but that she resigned *involuntarily* only because she was explicitly directed to do so by her employer. The court reasoned that "[i]f an employer can obtain resignations from weaker willed and less sophisticated employees in order to retaliate against them for exercise of rights involving a public policy by threatening discharge, even by implication, the remedy promulgated by the retaliatory discharge doctrine can be significantly impaired." (151 Ill. App. 3d at 1008.) Therefore, the appellate court concluded that a cause of action for retaliatory discharge exists for an employee who has been "forced to resign under the express or implied threat of discharge," and that plaintiff had sufficiently alleged that she was "discharged" within the retaliatory discharge concept.

We agree that plaintiff has sufficiently alleged that she was discharged, but wish to make abundantly clear

that we are not now endorsing the constructive discharge concept rejected by the appellate court in *Scheller*. We have no need to rule upon the viability of a constructive discharge theory at this time, because the plaintiff alleges that she was actually and not constructively discharged.

Plaintiff alleges that when she met with defendant's vice-president and requested medical attention, he told her that she should seek other employment. Such a statement, especially where as here, the employer simultaneously chastised the employee for being injured too often and costing the company too much money, could certainly be understood as a discharge. There are no magic words required to discharge an employee: an employer cannot escape responsibility for an improper discharge simply because he never uttered the words "you're fired." So long as the employer's message that the employee has been involuntarily terminated is clearly and unequivocally communicated to the employee, there has been an actual discharge, regardless of the form such discharge takes.

That defendant directed plaintiff to sign a "Voluntary Resignation" form also does not alter the allegation that plaintiff was involuntarily discharged. That Roland's required the official termination to be by the stroke of the employee's own pen does not shield it from liability for the act of discharge. At most, Roland's was offering plaintiff a way to save face, to keep her resume clear of a discharge. But from the alleged circumstances it is clear plaintiff was not being given an actual opportunity to continue her employment at Roland's: had she refused to sign the form, she would have been fired in any event.

Defendant's counsel conceded in oral argument that the reason defendant had plaintiff sign the resignation form was to "protect itself," presumably from claims of

improper discharge. It would be a bitter irony indeed if employers were allowed to protect themselves, to circumvent liability for retaliatory discharge by using their employees as the unwitting tools to escape responsibility for their tortious acts. This is especially true in this case, where plaintiff has alleged that she did not even understand the meaning of the voluntary resignation form, but signed it only because she was directed to do so by her employer.

The second element a plaintiff must allege in order to state a valid cause of action for retaliatory discharge is that the discharge was in retaliation for the employee's activities. This element basically requires that plaintiff allege the causal relationship between the employee's activities and the discharge. As the appellate court noted, the plaintiff's complaint labelled the discharge by defendant as retaliatory, but did not explicitly delineate the conduct on the part of the plaintiff for which plaintiff was discharged. However, the complaint spells out the course of events which led to her discharge, emphasizing that her disclosure of her work-related injuries and her request for medical attention, first to her supervisor and then to the vice-president, were the activities which triggered her discharge. Therefore, a fair reading of the complaint informs defendant that the activity which plaintiff claims she was discharged in retaliation for was requesting medical attention. Although plaintiff's complaint "is less specific than it could be," it informed the defendant of the crux of the claim and thus is sufficient. *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 134; see also Ill. Rev. Stat. 1985, ch. 110, par. 2—612(b) ("No pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet").

The final element a plaintiff must allege to state a claim for retaliatory discharge is that the discharge violates a clear mandate of public policy, because "[t]he foundation of the tort *** lies in the protection of public policy." (*Palmateer*, 85 Ill. 2d at 133.) This court has defined a clearly mandated public policy as "what is right and just and what affects the citizens of the State collectively." (85 Ill. 2d at 130.) Such a policy must "strike at the heart of a citizen's social rights, duties, and responsibilities." (85 Ill. 2d at 130.) Public policy is to be found in the State's Constitution, statutes and judicial decisions and, where the public policy arises from a statute or constitutional provision, it is identified by "examining the history, purpose, language and effect of the provision." *Barr*, 106 Ill. 2d at 527.

Defendant contends that no such policy has been violated by the discharge in this case because the policy underlying workers' compensation—the statutory enactment under which plaintiff claims a clear mandate of policy has been violated—protects only a worker's right to *compensation* for work-related injuries, not to medical attention itself. Such a construction of the policy underlying the Workers' Compensation Act is too narrow to be acceptable.

In *Kelsay v. Motorola, Inc.* (1979), 74 Ill. 2d 172, this court examined the public policy underlying the Workers' Compensation Act in the context of a retaliatory discharge action. The Act was intended to create a "new system of rights, remedies and procedure *** for accidental injuries or death of employees arising out of and in the course of the employment. *** [T]he fundamental purpose of the Act *** was to afford protection to employees by providing them with prompt and equitable compensation for their injuries." (*Kelsay*, 74 Ill. 2d at 180-81.) The policy underlying the Act is to provide "efficient remedies for and protection of employees and, as

such, promotes the general welfare of this State." (74 Ill. 2d at 181.) Thus, the overriding purpose of the Act is to protect injured employees by ensuring the availability of medical treatment, by shifting the financial burden of such treatment to the employer. See, *e.g., O'Brien v. Rautenbush* (1956), 10 Ill. 2d 167; *Petrazelli v. Propper* (1951), 409 Ill. 365.

The defendant obviously confuses the procedural means by which remedies are provided to employees under workers' compensation with the fundamental policy upon which the Act rests. Payment of compensation to employees for their work-related medical bills is only the means by which the State ensures that employees will receive medical attention for their on-the-job injuries. The Act clearly states that it is the employer's responsibility to both "provide and pay for" all necessary medical attention. (Ill. Rev. Stat. 1985, ch. 48, par. 138.8.) Requesting and seeking medical attention, as the plaintiff in this case did, is only the crucial first step in exercising rights under the Workers' Compensation Act. Given that plaintiff had filed workers' compensation claims for both of her previous work injuries, it is reasonable to assume she would have done likewise in this situation. It would be anomalous to allow a retaliatory discharge action to employees who are fired after filing a workers' compensation claim for work-related injuries, but not those who are injured and fired before they ever get the chance to file such claims. Plaintiff should not be penalized because her employer discharged her in retaliation for orally requesting medical attention, instead of filing a formal compensation claim—the effect is the same: being fired in retaliation for asserting legal rights to medical care for work-related injuries.

Finally, simply because plaintiff has alleged the three elements of a retaliatory discharge cause of action sufficiently to survive a motion to dismiss in no way prede-

termines the ultimate disposition of her claim. Upon further development of the facts, the fact finder may find that plaintiff did in fact voluntarily resign, or that the discharge was for some legitimate reason other than the request for medical attention. These are questions of fact that cannot be decided on a motion to dismiss. Accepting, as we must at this stage of the proceedings, all facts alleged by the plaintiff as true, and resolving all reasonable inferences in favor of the plaintiff, we conclude that plaintiff has sufficiently alleged the elements of a retaliatory discharge cause of action.

*Judgment affirmed.*