**Larry K. WASHBURN,
Plaintiff–Appellant,**

v.

**IBP, INC., Defendant–Appellee.**

**No. 89–1318.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 23, 1990.

Decided May 24, 1990.[1]

Louis E. Sigman, Baum & Sigman, Chicago, Ill., Raymond T. Walton, Donovan S. Robertson, Walton, Creen, Curry & Robertson, Davenport, Iowa, for plaintiff-appellant.

B. Douglas Stephens, Vanderkamp, Cleaver & Stojan, Rock Island, Ill., for defendant-appellee.

Before BAUER, Chief Judge, and EASTERBROOK and MANION, Circuit Judges.

BAUER, Chief Judge.

This is an appeal from the district court's grant of appellee's motion for summary judgment. Appellant Larry Washburn ("Washburn") filed suit in district court against appellee IBP, Inc. ("IBP"), his former employer, alleging that IBP fired him in retaliation for seeking medical attention and for filing a claim for workers' compensation. Jurisdiction was founded upon diversity of citizenship. Finding the undisputed evidence established that Washburn was terminated for his unauthorized absence from the job site, the court granted summary judgment in favor of IBP. We affirm.

I.

Washburn began working at the IBP meat packing plant in Joslin, Illinois in early December 1985. On December 20, Washburn fell between a truck and the loading dock and dislocated his shoulder. His supervisor, Richard Hall ("Hall") accompanied him to the plant dispensary where Cheryl Tank ("Tank"), a registered nurse, examined him. While Washburn was walking to the dispensary, his shoulder relocated. When Tank examined him, she

---

**1.** This case originally was decided by unpublished order under Circuit Rule 53. The defendant-appellee subsequently filed a motion re-

questing that the order be issued as a published opinion. The motion is hereby granted.

found that his shoulder was not red, swollen or limited in its range of motion. Tank recommended to Hall that Washburn be given a light duty job for the rest of his shift, instructed Washburn to use ice on his shoulder that night, and advised Hall to keep the dispensary informed of Washburn's condition.

Washburn went back to work in the case sealer room, where his supervisor was Troy Lang ("Lang"). Later that evening, Washburn again complained that his shoulder hurt and told Lang that he wanted medical attention. Lang sent him back to the dispensary and called Tank to tell her that Washburn was on his way. Washburn, however, "just went home at that point." (From there, Washburn drove to a local hospital where he was given painkillers and informed that he would need surgery on his arm.) About half an hour after receiving Lang's call, Tank called Hall to inform him that Washburn never arrived. Hall then searched the plant's premises for Washburn.

After searching for and not finding him, Hall filled out a termination report which stated "employee was told to go to nurse— never showed up—walked off job." IBP's written company policy provides that an employee may be terminated for "[u]nauthorized absence from the work area, assigned job, or [IBP] property." Hall's report is dated December 20, 1985 and is signed by him.

What happened next is unclear, but also irrelevant. In his affidavit, Washburn states:

Following my injury on December 20, 1985, I informed my employer of my condition, and was advised to keep them informed of my condition ... On January 6, 1986, I requested information concerning workers' compensation benefits and at that time was told that I had been fired, and that my injury was my own fault.

Washburn, however, did not know with whom he spoke when he first informed IBP of his injury, nor did he know the date of that first communication. Hall, on the other hand, states in his affidavit:

The next time I heard from Washburn was on December 26, 1985 at about 5:00 p.m., when Washburn called me at work and said that he had seen a doctor about his shoulder. I told Washburn that he had been terminated because he walked off the job.

It is clear, however, that when Washburn arrived at work on January 6, he was informed by Hall that he no longer had a job.

Washburn then brought suit for retaliatory discharge. After discovery had been completed, IBP filed a motion for summary judgment which the district court granted. Washburn filed a timely notice of appeal.

## II.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). To recover for the tort of retaliatory discharge, the plaintiff must prove that (1) he was discharged from employment; (2) in retaliation for his activities; and (3) the discharge violates a clear public policy. *Barr v. Kelso–Burnett Co.,* 106 Ill.2d 520, 478 N.E.2d 1354, 1358, 88 Ill.Dec. 628, 632 (1985). *See also Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 384 N.E.2d 353, 23 Ill.Dec. 559 (1978). Illinois courts have recognized a cause of action when a plaintiff is discharged in retaliation for filing a claim for workers' compensation, *Kelsay,* 384 N.E.2d 353, 23 Ill.Dec. 559, or for seeking medical attention. *Hinthorn v. Roland's of Bloomington,* 119 Ill.2d 526, 519 N.E.2d 909, 116 Ill.Dec. 694 (1988).

Washburn alleges that he was discharged in retaliation for seeking medical attention and for inquiring about his eligibility for workers' compensation. Although issues of motive may preclude the entry of summary judgment, the district court nevertheless found that there was no factual dispute over IBP's reason for terminating Washburn. It concluded that the undisputed evidence established that IBP terminated Washburn because he walked off the job site. On appeal, Washburn claims that because he was not informed of

374

his termination until January 6, 1986, at which time he inquired about workers' compensation, there is a factual dispute over IBP's motive in firing him.[2]

In order to survive a motion for summary judgment, Washburn's recitation of facts must show a causal connection between his protected actions, such as seeking medical attention, and IBP's decision to terminate him. At the very least, Washburn must submit some evidence that IBP knew he was exercising, or was going to exercise, his rights when it terminated him. *See Mercil v. Federal Express Corp.*, 664 F.Supp. 315 (N.D.Ill.1987). According to Hall's affidavit and IBP's records, Hall fired Washburn on December 20, 1985, because Washburn "walked off [the] job." Washburn admits that he left the plant without informing his supervisors where he was going or why, and that, prior to leaving, he had not inquired about workers' compensation benefits. That IBP had no knowledge of Washburn's intent to seek medical attention or file for benefits *on December 20*, when it terminated him, is undisputed. Because Washburn has offered no evidence to create the inference his termination was causally related to his intent to seek medical treatment or file a workers' compensation claim, IBP is entitled to judgment as a matter of law.

The decision of the district court is therefore

AFFIRMED.

---

2. Washburn also claims on appeal that, because IBP failed to give him adequate medical care, thereby forcing him to leave the plant, he was constructively discharged for seeking medical attention. We have two responses to this assertion. First, it is unclear whether Washburn raised this issue in the district court. Second, even if Washburn adequately preserved this issue for review, Illinois does not recognize a cause of action for constructive discharge. *See Hinthorn*, 519 N.E.2d at 912, 116 Ill.Dec. at 697; *Grey v. First National Bank of Chicago*, 169 Ill.App.3d 936, 523 N.E.2d 1138, 1142–43, 120 Ill.Dec. 227, 229–30 (1st Dist.1988); *Scheller v. Health Care Service Corp.*, 138 Ill.App.3d 219, 485 N.E.2d 26, 92 Ill.Dec. 471 (4th Dist.1985).