MELVYN E. BERGSTEIN, Plaintiff-Appellee and Counterdefendant-Appellee, v. TECHNOLOGY SOLUTIONS COMPANY, INC., *et al.*, Defendants-Appellants and Counterplaintiffs and Third-Party Plaintiffs-Appellants (Christopher J. Moffitt, Third-Party Defendant-Appellee).

First District (4th Division)    No. 1—94—3709

Opinion filed August 3, 1995.—Rehearing denied September 8, 1995.

Russ M. Strobel, Terri L. Mascherin, and Cathryn E. Albrecht, all of Jenner & Block, of Chicago, for appellant.

Robert G. Krupka, Sheri J. Engelken, and Ronald C. Provenzano, all of Kirkland & Ellis, and Mark L. Gordon, of Gordon & Glickson, P.C., both of Chicago, for appellees.

JUSTICE CAHILL delivered the opinion of the court:

This a dispute between Technology Solutions Company (TSC) and two former employees and officers, Melvyn Bergstein and Christopher Moffitt. Bergstein was also a director of the company. TSC is a computer consulting company.

Bergstein and Moffitt had employment contracts with TSC which contained two-year covenants not to compete. Bergstein and Moffitt, after tense departures from TSC which are the backdrop for this appeal, formed a competing business within two years.

Bergstein then sought a declaratory judgment that the restrictive covenants in his employment contract with TSC were void and unenforceable. TSC filed a counterclaim against Bergstein for a preliminary injunction and a declaratory judgment that Bergstein breached the restrictive covenants in his employment contract and also breached his fiduciary duties as a director of TSC. TSC also filed a third-party claim against Moffitt seeking a preliminary injunction and a declaratory judgment that Moffitt breached the restrictive covenants in his employment contract with TSC.

The trial court first found that TSC terminated Bergstein in breach of their employment contract. The court ruled that TSC's breach precluded it from enforcing the restrictive covenants and granted Bergstein the relief he sought. Next, the court ruled that Bergstein owed TSC no fiduciary duty as a director because he was "de facto not a member of [TSC's] board" from the date he was terminated as an employee. Finally, the court entered summary judgment for Moffitt, finding that TSC could not enforce the restrictive covenants in Moffitt's employment contract because TSC had cancelled the contract. TSC appeals each of these findings. We affirm the court's finding that TSC breached its contract with Bergstein. We reverse the court's finding that Bergstein owed TSC no fiduciary duty because of a "de facto" dismissal from the Board. We reverse the court's grant of summary judgment for Moffitt.

We first address TSC's argument that the trial court's finding that Bergstein was fired on September 7, 1993, is against the manifest weight of the evidence.

The trial court held a hearing on the issue of whether Bergstein was fired. Evidence was presented that Bergstein began working for TSC in September 1991 and was elected to the board of directors in October 1991.

Bergstein's employment contract with TSC was for three years, ending on September 5, 1994. TSC could terminate the contract only for (1) death or disability, or (2) serious misconduct. Both parties agree none of these things happened. Bergstein's contract prohibited

him from coaxing TSC's employees away from TSC or providing consulting services to TSC's clients within two years after he left the company.

Bergstein testified that on September 7, 1993, he went to a TSC board meeting. At that meeting a director told him: "The board has decided unanimously that we are terminating your services as of today, including your directorship." Four directors present at the meeting testified that Bergstein was "asked to resign." TSC offered to pay Bergstein the salary remaining under his contract, to pay him the profits from his stock options, and to forgive a loan the company had made to him.

The evidence also showed that on September 8, 1993, TSC disconnected Bergstein's voice mail system. He could not access the system to send messages to or receive messages from TSC's employees, officers, or directors. TSC posted a security guard at the doors of TSC to prevent Bergstein from removing TSC property. TSC issued a press release on September 9, 1993, which stated:

> "Technology Solutions Company (the 'Company') announced today that its Board of Directors has approved in principle a restructuring of its senior management organization and the composition of the Board. *** As part of the restructuring, it is expected that [an employee] and Melvyn E. Bergstein, each a director and vice chairman, will vacate those positions."

The next day, TSC deleted Bergstein's name from the TSC telephone list. TSC rerouted his telephone calls to someone other than his secretary and his mail to the secretary of TSC's counsel.

Bergstein did not tender a letter of resignation at this time or return to work. TSC paid Bergstein a salary until November 4, 1993, when it formally announced that Bergstein was terminated for failure to return to work. Bergstein tendered a letter of resignation in December 1993.

■ The trial court found this evidence showed that TSC terminated Bergstein's employment on September 7, 1993, in violation of the employment contract. We review whether the court's findings are against the manifest weight of the evidence. (*Eastern Seafood Co. v. Barone* (1993), 252 Ill. App. 3d 871, 876, 625 N.E.2d 664.) We find the evidence supports Bergstein's contention that he was discharged on September 7, 1993. We are not persuaded by TSC's argument that because the directors merely asked Bergstein to resign on September 7, 1993, he was not involuntarily terminated. (See *Hinthorn v. Roland's of Bloomington, Inc.* (1988), 119 Ill. 2d 526, 519 N.E.2d 909.) The court in *Hinthorn* stated:

> "There are no magic words required to discharge an employee: an

employer cannot escape responsibility for an improper discharge simply because he never uttered the words 'you're fired.' So long as the employer's message that the employee has been involuntarily terminated is clearly and unequivocally communicated to the employee, there has been an actual discharge, regardless of the form such discharge takes." *Hinthorn,* 119 Ill. 2d at 531.

TSC's conduct at the meeting on September 7, 1993, and later was a clear communication that it had involuntarily terminated Bergstein in breach of his employment agreement. We affirm the court's ruling that TSC cannot enforce the restrictive covenants in that agreement. See *McCormick v. Empire Accounts Service, Inc.* (1977), 49 Ill. App. 3d 415, 418, 364 N.E.2d 420.

■ The trial court next dismissed TSC's claim that Bergstein breached his fiduciary duties as a director and ruled that Bergstein was "de facto" not a director after September 7, 1993. The court based this conclusion on the previous finding that Bergstein was fired on September 7, 1993. But this finding and the evidence presented went to the issue of employment, not to Bergstein's fiduciary duties as a director. TSC argues it should be allowed to present evidence that Bergstein remained a member of the board of directors, that he owed TSC fiduciary duties as a director until his self-proclaimed resignation in December 1993, and that he breached those duties. The court refused to allow evidence on these issues and TSC's claim for a preliminary injunction. The trial court appeared to find a "de facto" termination of Bergstein's directorship based upon the evidence that supported the conclusion that Bergstein was terminated as an employee. But the two roles are separate. Only the shareholders of TSC possessed the power to remove Bergstein as a director, and there was no evidence presented to the trial court that suggests the shareholders of TSC consented to or participated in the actions of their board of directors on September 7, 1993. Further, Bergstein acknowledged that he remained a director of TSC until he resigned on December 14, 1993, and the evidence in the record reveals that Bergstein participated telephonically in five board meetings between September 7, 1993, and December 14, 1993. Consequently, the trial court's ruling on this issue was against the manifest weight of the evidence. We reverse this part of the trial court's ruling and remand for a full evidentiary hearing on TSC's motion for a preliminary injunction.

Finally, we address TSC's petition for a preliminary injunction to enforce the restrictive covenants in Moffitt's employment contract. Moffitt moved for summary judgment and argued that the restrictive covenants were not enforceable because TSC waived the right to enforce the covenants when TSC cancelled his contract in February

1993. TSC responded that it terminated Moffitt's employment under the terms of the contract and the termination triggered the restrictive covenants.

The evidence before the court showed that TSC hired Moffitt in 1988. Moffitt's employment contract read:

> "*Term of Employment.* TSC shall employ Employee as Vice President for a five year term ('employment period') beginning June 1, 1988 and ending June 3, 1993. \*\*\* The employment period shall be extended automatically for an indefinite term unless TSC or Employee delivers to the other written notice of non-renewal at least six months before the scheduled expiration of the Agreement. If the employment period is renewed, such employment shall continue until terminated by TSC or Employee upon giving the other six months' written notice of termination."

Termination under the contract triggered the restrictive covenants. Four months before Moffitt's employment term expired, TSC sent a letter to him dated February 3, 1993, which said:

> "The purpose of this letter is to notify you, pursuant to the terms of your Founder's Agreement, six months after the date of this letter your Founder's Agreement will be cancelled. We will be sending you the New Agreement in the near future for your review and signature. The effective date of the New Agreement will be the expiration date of the Founder's Agreement."

Moffitt took a leave of absence in June 1993. He performed no services for TSC and received no salary. He returned the last week of August 1993 and worked for three weeks. Moffitt did not sign a new employment contract, nor did he seek to modify his original employment contract. He resigned on September 20, 1993.

The trial court granted Moffitt summary judgment and said: "I am granting summary judgment for Mr. Moffitt, and with the finding that the agreement was cancelled by TSC and there was no restrictive covenant in this case to enforce against Mr. Moffitt after the termination \*\*\*."

Summary judgment shall be granted only if the pleadings, depositions, and admissions on file, together with the affidavits, show there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law. (*Logan v. Old Enterprise Farms, Ltd.* (1990), 139 Ill. 2d 229, 233, 564 N.E.2d 778.) We review a summary judgment *de novo. In re Estate of Hoover* (1993), 155 Ill. 2d 402, 615 N.E.2d 736.

■ The issue before the court was whether TSC's letter of February 3, 1993, was a notice of termination under Moffitt's employment contract, which would trigger the restrictive covenants. The February 3 letter states that TSC was sending notice "pursuant to the

terms of [Moffitt's] Founder's Agreement." The only six-month notice provision in the agreement is the notice provision for termination which triggers the running of restrictive covenants. A finder of fact could conclude that the parties intended and understood TSC's letter to be a notice of termination under the contract. So an issue of fact exists: whether TSC improperly "cancelled" Moffitt's contract or properly terminated his employment under the terms of the employment contract.

We note the summary judgment entered in favor of Moffitt was the product of a most unusual procedure. The trial court did not rule on Moffitt's motion until after it had heard evidence in support of and in opposition to TSC's motion for a preliminary injunction. The record shows that the trial court relied upon evidence presented during the preliminary injunction hearing to support its ruling on Moffitt's summary judgment motion. Section 2—1005 of the Code of Civil Procedure (735 ILCS 5/2—1005 (West 1992)) does not contemplate an evidentiary hearing to determine the movant's right to judgment as a matter of law. The determination of whether a party is entitled to summary judgment is to be made upon a consideration of the affidavits, admissions, depositions and pleadings on file (735 ILCS 5/2—1005(c) (West 1992)), not as the result of an evidentiary hearing. (*Diamond Mortgage Corp. v. Armstrong* (1988), 176 Ill. App. 3d 64, 530 N.E.2d 1041.) We reverse the summary judgment entered in favor of Moffitt and remand for a full evidentiary hearing on TSC's motion for a preliminary injunction as to Moffitt.

Affirmed in part; reversed in part and remanded.

HOFFMAN, P.J., and S. O'BRIEN, J., concur.