SECOND DIVISION
December 26, 2007

No. 1-06-2732

HEATHER ADDIS ) Appeal from the
) Circuit Court of
      Plaintiff-Appellant, ) Cook County
)
)
v. ) No. 04 L 12050
)
)
EXELON GENERATION COMPANY, L.L.C., ) Honorable
) Paddy H. McNamara,
      Defendant-Appellee. ) Judge Presiding.

JUSTICE KARNEZIS delivered the opinion of the court:

Plaintiff Heather Addis filed this cause of action seeking damages against

defendant Exelon Generation Company (Exelon) for retaliatory discharge. The jury

returned a verdict in favor of defendant. Plaintiff appeals contending that the jury's

verdict was contrary to the evidence and that there were numerous evidentiary errors at

trial. Defendant cross-appeals contending that the circuit court erroneously denied its

posttrial motion for sanctions. For the following reasons, we affirm.

Plaintiff began working at Exelon's nuclear power station in Dresden, Illinois, in 1997. In September 2002, she received her senior reactor license and became an operations shift supervisor. Her supervisor at that time was David Throne. Throne's boss was Richard Gadbois, who was the shift operations superintendent, and Gadbois' boss was Jim Henry, who was director or operations manager. Plaintiff worked in the control room and she supervised numerous employees both inside and outside the control room. She was required to maintain working files and score cards on the employees she supervised. Working files were used to document feedback that she had verbally given to employees. Plaintiff was expected to complete a weekly entry for each employee. Score cards contained checklists that assessed an employee's specific work function. Plaintiff was expected to complete four score cards a month.

Plaintiff met with Throne in November 2002. Throne informed plaintiff that her working files were not up to date and he subsequently sent her an e-mail reminding her to work on her score cards.

Plaintiff's performance review for the time period between September 2002 and December 2002, written by Throne, indicated that she was "error free." It noted that her working files had improved in level of detail and quality. She received a "D" rating, which meant that she needed development. Based on this performance review, plaintiff received an annual pay raise and bonus.

At the beginning of 2003, plaintiff and Throne developed an "Individualized

Development Plan," with goals of building relationships and "developing others." In February 2003, Throne indicated to plaintiff that she needed to continue to work on working files and to provide critical feedback on her reports to improve her employees' performances. His evaluation noted "goals not met."

In March 2003, Throne was no longer employed at Exelon and Glen Morrow became plaintiff's supervisor. According to plaintiff, at about that same time, she began to notice a "shift" in management's philosophy regarding safety and administrative duties. She believed that this shift resulted in management's lack of focus on safety, thereby endangering the operations of the plant. One example of this lack of focus on safety was a new policy regarding working files that required an 80/20 percentage ratio of positive to negative comments. Meeting this requirement affected whether plaintiff would receive an annual bonus.

In June 2003, plaintiff had a mid-year review with Morrow. The review indicated that plaintiff needed to work on her critical coaching of individuals to change undesirable behaviors and noted that she "does not want to rock the boat."

On September 28, 2003, plaintiff met with Morrow. He discussed her performance, noting areas where she was not performing to satisfaction, and he had negative comments about her performance. Morrow told plaintiff that her "number one" job was to "develop others." Plaintiff disagreed with Morrow, telling him that her job was to operate the plant safely. As plaintiff left, she told Morrow that she would hand in her resignation the next day.

On September 29, plaintiff handed in a resignation letter. Specifically the letter stated:

"This letter is to inform you of my intent to resign from Exelon - Dresden Station effective October 10, 2003. If you have any questions, I can be reached at * * *."

Morrow sent plaintiff an e-mail stating that he would forward her letter to Jim Henry. No other communication between plaintiff and Exelon's management occurred until October 10.

Meanwhile, on October 1, plaintiff went to Exelon's employee concern's program and reported her concerns that operations management was not focused on safety and that they were creating a "chilled" environment where employees could not raise concerns without fear of receiving negative comments in their working files. She requested that her concerns remain confidential. Plaintiff submitted a concern disclosure statement where she gave specific examples of the problems she was having with operations management. Employee concerns investigator Bob Speek notified several individuals of plaintiff's concerns, including individuals within the employee concerns department, Exelon's legal counsel (Tom O'Neill) and Jim Henry. Although Speek did not mention plaintiff's name to Henry, Henry guessed that it was most likely plaintiff.

On October 2, plaintiff handed in a letter rescinding her resignation. Specifically, the letter stated:

4

"This letter is to inform you that I am rescinding my resignation dated September 29, 2003. I submitted my resignation in error. I enjoy working at Exelon and look forward to a long and fulfilling career here."

Exelon's management had discussions about plaintiff's employment and two conference calls occurred on October 2 and 7. Tom O'Neill's notes from the October 7 conference call stated:

"Danny (Bost[1]): She's a performance problem, based on her refusal to do [administrative] work.

If she had not filed allegation would we take her back?

Danny not sure.

Will get back."

On October 10, plaintiff met with Richard Gadbois and a human resources representative. Gadbois told plaintiff that she was being "terminated" because she failed to support management's initiatives and refused to comply with the working file requirements for documenting performance.

At trial, plaintiff denied resigning and referred to her resignation letter as a letter of intent to resign. On cross-examination, however, she admitted that on September 29, she started "networking" with her friend, David Stobaugh, which meant that she took steps to find a new job. Plaintiff sent several e-mails to Stobaugh that day, one of

---

[1] Danny Bost was the plant manager.

5

them specifically stating that she "turned in [her] resignation today" and that "October 10 will be [her] last day." When Stobaugh replied asking plaintiff why she was leaving, she replied that, "[w]hen the BS is heavier than the paycheck... time to go..."

The jury returned a verdict in favor of defendant. Subsequently, plaintiff filed a motion for judgment notwithstanding the verdict and for a new trial. She alleged that the circuit court should set aside the jury's verdict because it was contrary to the evidence. She further alleged that the numerous evidentiary errors that occurred at trial warranted a new trial. Defendant filed a motion for sanctions alleging that plaintiff's motion for judgment notwithstanding the verdict was frivolous. The circuit court denied both motions. Plaintiff now appeals. Defendant cross-appeals from the denial of its motion for sanctions.

Initially, we note that plaintiff incorrectly sets forth the applicable standards of review on appeal. A motion for judgment notwithstanding the verdict has a different standard of review than a motion for a new trial. A motion for judgment notwithstanding the verdict should be entered only when all of the evidence, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict based on that evidence could stand. Pedrick v. Peoria & Eastern R.R. Co., 37 Ill. 2d 494, 510 (1967). In contrast, a trial court's ruling on a motion for a new trial will not be reversed except where it is affirmatively shown that the trial court clearly abused its discretion. Maple v. Gustafson, 151 Ill. 2d 445, 454 (1992). In determining whether the trial court abused its discretion, we consider whether the jury's verdict was against

the manifest weight of the evidence. Simmons v. University of Chicago Hospitals & Clinics, 247 Ill. App. 3d 177, 190 (1993). Although plaintiff appeals from the denial of her motion for judgment notwithstanding the verdict and for a new trial, she only argues on appeal that her motion for judgment notwithstanding the verdict should have been granted. Plaintiff makes no argument that the jury's verdict was against the manifest weight of the evidence. Therefore, plaintiff has waived any such argument. See 210 Ill. 2d R. 341(h)(7) (points not argued are waived).

## I. Retaliatory Discharge

Plaintiff first contends that her motion for judgment notwithstanding the verdict should have been granted because the jury's verdict was contrary to the evidence. She argues that she presented "overwhelming" evidence that proved the elements of retaliatory discharge.

As stated above, a motion for judgment notwithstanding the verdict should be entered only when all of the evidence, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict based on that evidence could stand. Pedrick v. Peoria & Eastern R.R. Co., 37 Ill. 2d 494, 510 (1967). We review decisions on motions for judgments notwithstanding the verdict *de novo.* See McClure v. Owens Corning Fiberglas Corp., 188 Ill. 2d 102, 132 (1999).

In Illinois, an at-will employee may be terminated at any time for any or no reason. Palmateer v. International Harvester Co., 85 Ill. 2d 124, 128 (1981). Illinois courts have recognized the tort of retaliatory discharge as a limited and narrow

7

exception to the at-will employment rule.  Hinthorn v. Roland's of Bloomington, Inc., 119 Ill. 2d 526, 529 (1988).  To establish a cause of action for retaliatory discharge, a claimant must show: (1) that he or she has been discharged; (2) in retaliation for his or her activities; and (3) that the discharge violates a clear mandate of public policy.  Stebbings v. University of Chicago, 312 Ill. App. 3d 360, 365 (2000).

To determine whether the circuit court properly denied plaintiff's motion for judgment notwithstanding the verdict, we must consider whether the evidence, viewed in the light most favorable to defendant, so overwhelmingly favored plaintiff that no contrary verdict could stand.  We note that, in finding for defendant, the jury could have found that plaintiff had not been discharged or that she had not been discharged in retaliation for reporting safety concerns.[2]

We first consider whether the evidence could support a finding that plaintiff was not discharged.  Plaintiff maintains that she was discharged as of October 10, when defendant terminated her employment.  We highlight the following evidence adduced at trial.  During plaintiff's meeting with Morrow on September 28, plaintiff stated that she would resign the next day.  On September 29, plaintiff submitted her resignation.  She admitted at trial that on September 29, she took steps to find a new job.  Her e-mails to a friend specifically stated that she "handed in [her] resignation" and that October 10 "will be [her] last day."  Also, plaintiff's October 2 letter specifically stated she had

_____

[2]  On appeal, defendant does not address whether plaintiff's discharge violated public policy, so we need not address it.

submitted her resignation in error and was now rescinding that resignation. Plaintiff's own e-mails admitted that she resigned because the "BS [was] heavier than the paycheck." We find that there was more than enough evidence to support a finding that plaintiff resigned her employment and was not discharged.

Plaintiff relies heavily on Hinthorn v. Roland's of Bloomington, Inc., 119 Ill. 2d 526 (1988), to support her contention that she was discharged. In Hinthorn, the plaintiff suffered a back injury while at work and sought medical treatment. The vice-president of the company told the plaintiff that she should seek other employment and that she had been getting hurt too much, which was costing the company too much money. He then directed her to sign a "voluntary resignation" form. She signed the form, understanding that if she did not sign it, she would lose her job anyway. The plaintiff filed a complaint alleging retaliatory discharge and the defendant filed a motion to dismiss for failure to state a cause of action for retaliatory discharge, which the circuit court granted. This court reversed and remanded, and the supreme court affirmed this court's judgment. The supreme court agreed with this court's finding that "a cause of action for retaliatory discharge exists for an employee who has been 'forced to resign under the express or implied threat of discharge,' and that the plaintiff had sufficiently alleged that she was 'discharged' within the retaliatory discharge concept." Hinthorn, 119 Ill. 2d at 530. However, the supreme court cautioned that they "wish to make abundantly clear that we are not now endorsing the constructive discharge concept rejected by the appellate court in Scheller." Hinthorn, 119 Ill. 2d at 530-31. The

supreme court noted that in <u>Scheller v. Health Care Service Corp.</u>, 138 Ill. App. 3d 219 (1985), this court rejected the plaintiff's contention that her voluntary resignation in response to her employer's alleged harassment amounted to a constructive discharge. <u>Hinthorn</u>, 119 Ill. 2d at 529-30.

We are not persuaded by plaintiff's reliance on <u>Hinthorn</u>. Here, there is no evidence or even any hint of evidence that plaintiff was forced to resign as in <u>Hinthorn</u>. In fact, plaintiff was the first to mention resigning when she told Morrow after their meeting that she would hand in her resignation the next day. Plaintiff did so by submitting a letter that she composed and typed herself, which stated that she was resigning. <u>Hinthorn</u> does not support plaintiff's position.

We next consider whether the evidence could support a finding that plaintiff had not been discharged in retaliation for reporting safety concerns. Plaintiff argues that her discharge was in retaliation for reporting safety concerns to Exelon's employee concerns program. Plaintiff claims that this is evidenced by the meetings and conference calls by Exelon's management wherein they discussed plaintiff's report of safety concerns in combination with her employment status. She points to Tom O'Neill's notes that Danny Bost admitted that he was not sure whether plaintiff would have been retained had she not made her report. Plaintiff also points out that before terminating her, Exelon's management did not review her work history or personnel file or consult with her supervisor regarding her performance.

The evidence presented at trial indicated that almost immediately after becoming

10

an operations shift supervisor, plaintiff failed to meet performance goals or expectations. This was documented by her first supervisor, David Throne, as early as December 2002 and again in February 2003. Her subsequent supervisor, Glenn Morrow, continued to document plaintiff's failure to maintain working files and score cards as well as other deficiencies. Even the most persuasive piece of evidence plaintiff points to, which is Bost's admission or inquiry whether they would have taken plaintiff back if not for her safety report, is ambiguous. Bost's notation is the only indication that plaintiff's employment status was discussed in combination with her report of safety concerns. However, this can hardly establish that plaintiff was discharged in retaliation for reporting safety concerns, especially since Bost also indicated that plaintiff had a "performance problem, based on her refusal to do [administrative] work."

We find that there was more than enough evidence to support a finding that plaintiff was not discharged in retaliation for reporting safety concerns. The jury heard the evidence and could have believed the testimony that plaintiff's inferior work caused her discharge and that defendant simply accepted plaintiff's resignation.

In conclusion, when viewing the evidence in the light most favorable to defendant, we cannot find that the evidence so overwhelmingly favors plaintiff that no contrary verdict could stand. Therefore, we conclude that the circuit court properly denied plaintiff's motion for judgment notwithstanding the verdict.

## II. Evidentiary Errors

Next, plaintiff contends that the circuit court made numerous evidentiary errors that singularly and cumulatively denied plaintiff a fair trial. Plaintiff argues that the circuit court's errors included erroneous jury instructions, failure to remove biased jurors and erroneous rulings on several motions *in limine*.

Jury Instructions

With respect to the court's jury instructions, plaintiff argues that jury instruction Nos. 5, 6, 7 and 9 were erroneous. We address each instruction in the order presented in plaintiff's brief.

Trial courts have discretion when determining appropriate jury instructions and will be reversed only for an abuse of discretion. Dillon v. Evanston Hospital, 199 Ill. 2d 483, 505 (2002). A trial court has not abused its discretion when, taken as a whole, the jury instructions are sufficiently clear so as not to mislead the jury and if they fairly and correctly state the law. Dillon, 199 Ill. 2d at 505. It is for the trial court to evaluate whether a jury instruction is supported by evidence in the record and is an accurate statement of law. Luye v. Schopper, 348 Ill. App. 3d 767, 773 (2004).

Plaintiff argues that jury instruction No. 7 was erroneous because it forced plaintiff to make a factual admission that she resigned her employment.

Instruction No. 7 stated:

"Plaintiff admits that she initially resigned but denies the defendant made any decision with regard to terminating her employment until after her meeting with the employee concerns program in receipt of her letter

12

rescinding her resignation."

Plaintiff argues that the instruction was improper because she repeatedly denied that she resigned.

We find instruction No. 7 proper because it conformed to the evidence presented at trial. Plaintiff's resignation letter was admitted into evidence at trial and numerous individuals testified regarding the letter. Although plaintiff testified at trial that she did not resign, the instruction did conform to plaintiff's theory of the case that defendant only terminated plaintiff because of her complaints to the employee concerns program. The ultimate issue in the case was not whether plaintiff resigned, but whether plaintiff was discharged in retaliation for reporting safety concerns. The instruction reflected the evidence presented at trial and we find no abuse of discretion.

Plaintiff argues that jury instruction No. 6 provided erroneous definitions of discharge and resignation.

Final Instruction No. 6 provided:

"A discharge in the employment context is commonly understood to mean a release, dismissal or termination of an employee. A discharge from employment is not voluntary. A resignation is a voluntary surrender of a position by the one resigning made freely and not under duress."

Plaintiff argues that the court should have issued its proposed instruction instead because it was "supported by long standing precedent and the IPI [Illinois Pattern Jury Instructions]." However, plaintiff's proposed instruction was not an IPI instruction and

1-06-2732

the court was under no obligation to use it.  Further, plaintiff fails to specifically argue how the court's definitions of discharge and resignation were erroneous.  We find no abuse of discretion.

Plaintiff argues that jury instructions Nos. 5 and 9 were erroneous.  Plaintiff argues that instruction No. 5 was "very vague" and did not conform to the law.  Plaintiff does not specifically argue how instruction No. 9 was erroneous, but instead argues that her proposed instruction was more reflective of the law than instruction No. 9.  Plaintiff's argument with respect to instructions Nos. 5 and 9 is extremely brief, totaling less than a single page.  Plaintiff does not quote the actual instructions in her brief and does not state how the instructions failed to conform to the law or misled the jury.  Therefore, we find we are unable to address plaintiff's contentions of error in any meaningful manner, and we determine that there was no abuse of discretion.

Juror Bias

Plaintiff contends that the court erred in refusing to strike juror Covel.  Plaintiff maintains that Covel displayed his bias against plaintiff by wearing an inappropriate T-shirt one day during trial.  Covel wore a black T-shirt with a stick figure individual in a darkened room peering through a doorway full of light with the caption, "If it weren't for electricity, where would you be?"  In chambers, the court questioned Covel about his shirt.  He stated that he thought the shirt was "humorous and it doesn't reflect either side in my opinion."  Plaintiff moved for the court to dismiss Covel, but the court denied plaintiff's request.

14

A trial court's decision whether to discharge a juror during trial is within the sound discretion of the trial court. Lowe v. Norfolk & Western Ry Co., 124 Ill. App. 3d 80, 105 (1984). A juror may only be discharged upon a showing of good cause, and prejudice must be shown in order to warrant reversal. Lowe, 124 Ill. App. 3d at 105. Mere suspicion of bias does not disqualify a juror. See Roach v. Springfield Clinic, 157 Ill. 2d 29 (1993).

Here, plaintiff does not allege any specific prejudice she suffered and only complains of Covel's potential bias. We note that plaintiff must show more than a suspicion of bias to establish prejudice. Plaintiff has failed to do so. We find no abuse of discretion.

Plaintiff further contends that the court erred when it denied her request to have several jurors dismissed for cause during *voir dire*. Plaintiff argues that the trial court's failure to remove the biased jurors denied her a fair trial because plaintiff had to accept "manifestly objectionable jurors" after plaintiff had exhausted her peremptory challenges.

Litigants are entitled to an impartial panel of jurors who are free from bias or prejudice. Kingston v. Turner, 115 Ill. 2d 445, 464 (1987). The trial court has great discretion in determining whether to excuse a prospective juror for cause. Marcin v. Kipfer, 117 Ill. App. 3d 1065, 1067 (1983). Great weight is given to a prospective juror's statement under oath that the juror can lay aside matters that might indicate bias and that he can render a verdict based on the evidence. Marcin, 117 Ill. App. 3d at

15

1-06-2732

1067.

Plaintiff argues that juror Brady should have been dismissed for cause because her family members (aunt and nephew) were employed by Commonwealth Edison (Com Ed), an affiliate of defendant. When the court asked juror Brady if she had any strong feelings about nuclear power, she responded that she was "for it." Brady also stated that she did not know what jobs her relatives held at Com Ed. She further stated that she could be fair and impartial. Plaintiff maintains that because juror Brady had "family ties" to the nuclear power industry and she expressed favoritism for nuclear power, she should have been dismissed.

Here, we are to give great weight to juror Brady's statement that she could be fair and impartial. We cannot find that, merely because a juror's relatives were employed by an affiliate of defendant in some capacity, it was an abuse of discretion not to dismiss the juror. Further, simply because juror Brady stated that she was "for" nuclear power does not mean that she would support defendant discriminating against plaintiff. We find no abuse of discretion.

Plaintiff argues that juror Zanarini should have been dismissed for cause because she stated that she had strong, negative feelings about people who bring lawsuits and that a lot of people bring unnecessary lawsuits. However, when the court asked Zanarini if her opinions on lawsuits would affect her ability to remain impartial, she replied "no." Zanarini also stated that employees who feel they are justified in bringing lawsuits have the right to do so and that her feelings about a lawsuit would

16

depend on the specific case. Again, we are to give great weight to juror Zanarini's statement that she could be fair and impartial. We find that the court did not abuse its discretion in failing to dismiss juror Zanarini because her testimony established that she could remain impartial.

Plaintiff argues that juror Pagan should have been dismissed because he was the supervisor of a terminated employee who raised claims of employment discrimination and filed a lawsuit against the company. Plaintiff argues that this demonstrated a "high probability" of bias against plaintiff. However, as stated above, a mere suspicion or probability of bias is not the same as actual bias or prejudice and does not disqualify a juror. Further, the juror stated that he supervised over 100 employees and was not the "direct guy" involved in the discrimination allegation. Moreover, he stated that the matter would not impact his ability to be fair in this case. We find no abuse of discretion.

Plaintiff argues that because she was forced to use her four peremptory challenges on jurors that the court should have dismissed for cause, she was unable to dismiss juror Crosson, who was biased. Plaintiff argues that juror Crosson should have been dismissed because she admitted to owning stock in Exelon Corporation. The court denied plaintiff's motion to strike because it found that any verdict in this case was not going to affect the price of the stock of Exelon. During *voir dire*, juror Crosson stated that she owned stock in Exelon Corporation, not in Exelon Generation Company, L.L.C., which is the defendant here. She further stated that she could be fair and

impartial and her judgment would not be affected by her stock ownership. When questioned by plaintiff's counsel, juror Crosson indicated that she would not have "any difficulty awarding money damages." As stated above, suspicion of bias is insufficient. Plaintiff must show actual bias or prejudice. We find no abuse of discretion.

Motions <em>in limine</em>

Plaintiff contends that the circuit court erred in denying several of her motions <em>in limine</em>. A motion <em>in limine</em> is addressed to the trial court's inherent power to admit or exclude evidence, and this court will not disturb the trial court's ruling absent an abuse of discretion. Beehn v. Eppard, 321 Ill. App. 3d 677, 680 (2001).

Plaintiff argues that the court erred in denying her motion <em>in limine</em> No. 11, which sought to bar the contention that plaintiff's report to the employee concerns program constituted protected activity. Plaintiff notes that during the proceedings before the United States Department of Labor, defendant stipulated that plaintiff's safety report constituted protected activity under the Energy Reorganization Act of 1974 (42 U.S.C. §5851(a)(1)(A)(2000). Plaintiff maintains that defendant should have been estopped from arguing in this case that her safety report did not constitute protected activity.

Plaintiff's contention is misplaced. Here, plaintiff brought a cause of action for retaliatory discharge, not a cause of action pursuant to the Energy Reorganization Act as in the Department of Labor proceedings. Claims for retaliatory discharge do not require a finding of protected activity. We find no abuse of discretion.

Plaintiff also argues that the court erred in denying her motion <em>in limine</em> No. 6,

which sought to exclude evidence regarding plaintiff's posttermination employment. Plaintiff sought to exclude from evidence that she was employed by a separate employer as an independent contractor at Exelon-owned facilities. Plaintiff argues that the court's ruling was erroneous because it created the impression that no retaliatory motive could exist if Exelon "allowed" plaintiff to work at its facilities following her termination.

Here, plaintiff fails to argue how the court's failure to exclude this evidence was an abuse of discretion. She merely argues that the court's ruling created an "impression" that no retaliatory motive existed. We are unable to find any abuse of discretion.

Cumulative Evidence on Work Performance

Plaintiff argues that she filed objections to defendant's exhibit list and objections to defendant's witness list in order to prevent the admission of excessively cumulative and irrelevant evidence regarding plaintiff's work performance. Specifically, plaintiff sought to prevent the testimony of David Throne, a supervisor who left Exelon six months prior to plaintiff's termination.

The relevance and admissibility of evidence at trial is within the sound discretion of the trial court. Wojcik v. City of Chicago, 299 Ill. App. 3d 964, 971 (1998). Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Wojcik, 299 Ill. App. 3d at 971.

Here, Throne's testimony was not cumulative or irrelevant. Plaintiff testified on direct and cross-examination at length about her performance as an operations shift supervisor. As her supervisor for several months, Throne's testimony was relevant and his evaluation reports were admitted into evidence. Merely because Throne was not employed at Exelon at the time of plaintiff's termination does not make his testimony irrelevant or cumulative. His testimony directly related to the issue of whether plaintiff was discharged in retaliation for reporting safety concerns.

Improper remarks and testimony

Plaintiff argues that she was denied a fair trial because of defendant's "continual" references throughout trial that "alluded" to the ultimate findings of plaintiff's safety reports to the employee concerns program. Plaintiff also maintains that defendant violated the court's order that stated that plaintiff did not have to allege or prove any violation of nuclear safety laws as an element to her retaliatory discharge claim. Plaintiff claims that during closing argument, defense counsel repeatedly asked the jury to consider whether plaintiff's safety concerns constituted a violation of nuclear safety laws.

Initially, we note that plaintiff did not object to any of the alleged improper evidence and has thus waived this issued for review. Preservation of a question for review requires an objection in the court below and the failure to object constitutes waiver. Williamsburg Village Owners' Ass'n v. Lauder Associates, 200 Ill. App. 3d 474, 479 (1990). Waiver aside, we are unable to address plaintiff's contention regarding the

ultimate conclusion of the employee concerns program. Plaintiff fails to point to any specific statements from defense counsel or witnesses. Plaintiff only argues that there were continual references that "alluded" to the ultimate conclusion. Without anything more specific, we are unable to address plaintiff's contention.

Regarding plaintiff's contention that defense counsel's comments during closing argument were improper, plaintiff's contention is misplaced. Counsel did not argue that plaintiff needed to prove a violation of nuclear safety laws to prove her cause for retaliatory discharge. Counsel noted in closing that plaintiff had previously been complimented in her working files for bringing safety issues to management's attention. Counsel then asked the jury to consider what was the unsafe nuclear energy practice that plaintiff reported for which she alleged being terminated. Within the context of the closing argument, defense counsel was asking the jury to consider whether plaintiff had proved her allegations that she had been discharged in retaliation for reporting safety concerns rather than for poor performance. We find no error.

Cumulative Effect of Errors

Plaintiff argues that the cumulative effect of the above errors violated plaintiff's right to a fair trial. We disagree because we find no errors based on plaintiff's above contentions.

III. Defendant's Cross-Appeal

Defendant cross-appeals the circuit court's denial of its motion to sanction plaintiff for filing a frivolous motion for judgment notwithstanding the verdict in violation

of Supreme Court Rule 137 (155 Ill. 2d R. 137).

Rule 137 provides:

"The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation ***." 155 Ill. 2d R. 137

Defendant argues that plaintiff's motion violated Rule 137 because it was not well grounded in fact and warranted by law.

The purpose of Rule 137 is to prevent the filing of frivolous and false lawsuits. Toland v. Davis, 295 Ill. App. 3d 652, 657 (1998). The rule is designed to prohibit the abuse of the judicial process by claimants who make vexatious and harassing claims based upon unsupported allegations of fact or law. Senese v. Climatemp, Inc., 289 Ill. App. 3d 570, 581 (1997). However, the rule is penal in nature and therefore must be strictly construed. Toland, 295 Ill. App. 3d at 658. The determination of whether to grant sanctions under the rule is entrusted to the sound discretion of the trial court. Belfour v. Schaumburg Auto, 306 Ill. App. 3d 234, 243 (1999).

Here, we find that plaintiff's motion for judgment notwithstanding the verdict

asked the circuit court to review the jury's findings of fact. Whether plaintiff was discharged and whether she was discharged in retaliation for reporting safety concerns were questions of fact for the jury to determine. Evidence was presented from which the jury could have found in plaintiff's favor had the jury not believed defendant's witnesses. Therefore, we disagree with defendant that plaintiff's motion was not well grounded in fact and warranted by law. We find that the circuit court did not abuse its discretion in denying defendant's motion for sanctions.

Lastly, we note that defendant contends that the circuit court should have granted its motion to dismiss pursuant to section 2-619(a)(3) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(3) (West 2002)). However, we note that defendant may not raise such an argument on appeal. A party may not appeal from a final judgment that was in no way adverse to it. Davis v. International Harvester Co., 167 Ill. App. 3d 814, 819 (1988).

## IV. Conclusion

Accordingly, we affirm the judgment of the circuit court.

Affirmed.

HOFFMAN, P.J., and SOUTH, J., concur.