Diane L. **LINDEMANN**, Plaintiff,

v.

**MOBIL OIL CORPORATION**, Defendant.

No. 95 C 7724.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 23, 1996.

---

Frank P. Tighe, III, Oakbrook, IL, for plaintiff.

Patrick John Ahern, Baker & McKenzie, Chicago, IL, for defendant.

## *MEMORANDUM OPINION AND ORDER*

CASTILLO, District Judge.

In this action, plaintiff Diane Lindemann charges that defendant Mobil Oil Corporation terminated her in retaliation for her prior use of short-term disability benefits (sick leave). Presently pending before the Court are cross-motions for summary judgment. Mobil argues that the reason Lindemann was fired was her many absences, not her use of benefits *per se,* and that absenteeism is a legitimate, non-discriminatory reason for her termination. Lindemann agrees that she "was discharged solely due to absences," Pl.'s Mem.Supp. of Second Mot. for Partial Summ.J. and Opp. Def.'s Mot. for Summ.J. at 1, but argues that as a matter of law, a discharge based on approved absences that involved the use of benefits (such as those taken by Lindemann) is the same as a discharge based on the use of benefits, and that it violates § 510 of the Employee Retirement Insurance Security Act ("ERISA") because it has the effect of penalizing the employee for a protected use of benefits. Thus, the sole question presented by this motion for summary judgment is an issue of law. For the following reasons, we grant summary judgment in favor of Mobil.

## RELEVANT FACTS

The following facts are taken from the statements of fact submitted by the parties pursuant to Local General Rule 12, and the responses thereto. Diane Lindemann worked for Mobil Oil at its Cicero Lube Plant. Mobil has an employee benefit plan covering short term disability, which provides that employees who are disabled by injury or illness not related to work will be paid their base salary during the disability, adjusted by several factors. *See* Def.'s Ex. 14, Disability Benefits Program brochure, at 78–79. In order to be receive these benefits, employees need only notify their supervisors as soon as possible, obtain the supervisors' approval for the absence as "an excused absence due to disability," and provide medical evidence of the disability if requested. *Id.* at 85. At the very end of the section explaining the short and long term disability benefits plans, the program description states, "Neither the existence of the disability plans nor any of their provisions shall restrict the Company's right to terminate employment." *Id.* at 87.

In late 1992, Lindemann asked Matt Burbach, who was then her supervisor, for time off for a medical procedure related to treatment of a cataract. Burbach approved her request, and Lindemann was absent December 29–31, 1992. Thereafter, Lindemann called in sick on over two dozen days during the next year and a half. Each time she called in sick, her request for sick leave was approved by her supervisor, and she was paid her full base pay, indicating that Mobil considered her absences "excused absence[s] due to disability."

Mobil's attendance policy was a "no fault" policy, i.e., an employee could be penalized for absences regardless of whether they were excused or not. On July 23, 1993, Burbach and Lindemann had a conversation in which Burbach told Lindemann that due to her past absences, she could be disciplined and perhaps even fired if she was absent from work again in the near future. Follow-

ing additional absences due to illness in August, Burbach and Lindemann had a repeat of this conversation on August 31, 1993. On several occasions, Burbach told Lindemann that the fact that her absences were approved under Mobil's disability benefits program did not excuse compliance with Mobil's attendance policy. On these occasions, Lindemann responded that she felt her excused absences should not count as absences under the attendance policy. Burbach wrote several letters to Lindemann's personnel file regarding Lindemann's ongoing absences, and other matters not relevant here.[1]

In April, 1994, Janet Lieb became Lindemann's supervisor. On May 31, 1994, which was apparently the first time Lindemann asked Lieb for the day off due to illness, Lieb told Lindemann that she really needed Lindemann to come in that day because she was the only one in the department that day. Lindemann remained at home. Lindemann called Lieb the next day as well, asking for another day off due to illness.

Lieb told her immediate supervisor, Plant Superintendent Jim Lewis, that Lindemann's absences were causing her a problem. At Lewis' suggestion, Lieb and Lewis obtained Lindemann's personnel file and reviewed it. Lindemann's personnel file showed that Lindemann had been "counselled" for attendance problems three times, on March 19, 1993, July 31, 1993, and August 31, 1993, and Burbach had written Lindemann a letter stating that it was her "Final Letter of Warning" on November 4, 1993. Lieb and Lewis determined that grounds existed to fire Lindemann for absenteeism. Lieb drafted a letter firing Lindemann, which was approved by Plant Manager John Thomas and the plant's Employee Relations Advisor. The letter stated in pertinent part: "A review of your attendance record for the past 24 months illustrates the factors which resulted in your termination[.] [List of absences.] ... On many occasions within the past 24 months, you have been given copies of documentation concerning your attendance

problem[.] ... After repeated warnings, you have failed to be at work regularly and on time." The letter fired Lindemann effective June 6, 1994.

The parties agree that Mobil discharged Lindemann in accordance with its attendance program and policy, as expressed in Mobil's "Salaried Attendance Improvement Guidelines," Pl.'s Ex. 5, which provided that an employee could be terminated if she was absent after being counseled twice regarding attendance. Lindemann contends that this policy violates ERISA, as it allows employees to be penalized for absences that are approved and excused uses of their benefits under Mobil's disability benefits program.

## ANALYSIS

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). Because we find that Mobil is entitled to judgment as a matter of law, we grant summary judgment in its favor.

■ Lindemann argues that she was discharged in retaliation for her use of short term disability benefits. The parties do not dispute that Mobil's employee benefit plan is covered by ERISA. Section 510 of ERISA provides in pertinent part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan....

29 U.S.C. § 1140 (1996). The Seventh Circuit has stated that Congress' primary aim in enacting § 510 was to prevent "unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights" or other

---

1. The parties dispute whether Lindemann was ever tardy to work and whether tardiness played any part in her termination. Even if we discount the evidence that tardiness contributed to the firing, however, it would not change the Court's conclusion that Mobil was entitled to fire Lindemann based upon her absences alone. As the dispute is thus irrelevant to the outcome, we disregard the arguments related to tardiness and other disputed misconduct.

benefits. *Meredith v. Navistar Int'l Transp. Corp.*, 935 F.2d 124, 127 (7th Cir.1991) (quoting *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 237 (4th Cir.1991)). The essence of § 510's purpose is thus protection against adverse action by an employer that is motivated by a desire to diminish the costs of its benefits plans by preventing or retaliating for the use of such plans. *See id.; Flanagan v. Hunter Automated Mach. Corp.*, No. 92 C 5412, 1995 WL 144548 at *7 (N.D.Ill. March 29, 1995) (factors such as internal memo expressing concern over rising health insurance costs and manager's knowledge that employee's wife had cancer created inference of impermissible economic motivation to interfere with employee's benefits).

■ The parties' primary legal dispute involves the proper legal standard Lindemann must meet to establish that Mobil violated ERISA. To prove a § 510 violation, a plaintiff must show that the defendant terminated her with the specific intent of retaliating for, or preventing, her use of benefits. *See Little v. Cox's Supermarkets*, 71 F.3d 637, 642 n. 3 (7th Cir.1995) ("a plaintiff in an ERISA action must demonstrate that the employer had the 'specific intent' to violate the statute"); *see also Meredith*, 935 F.2d at 127 (same) (citing *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 347 (3d Cir.1990) ("To recover under § 510 the employee must show that the employer made a conscious decision to interfere with the employee's attainment of ... benefits.")). Without such specific intent, there is no § 510 claim, even if the employee's access to benefits has been affected. "No ERISA cause of action lies where loss of ... benefits is a mere consequence of, but not a motivating factor behind, a termination of employment." *Titsch v. Reliance Group, Inc.*, 548 F.Supp. 983, 985 (S.D.N.Y.1982), *aff'd without op.*, 742 F.2d 1441 (2d Cir.1983). "Proof of incidental loss of benefits as a result of termination will not constitute a violation of § 510." *Gavalik v. Continental Can Co.*, 812 F.2d 834, 851 (3d Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987). *See also Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1111 (2d Cir.1988) ("Plaintiff is required to prove more than the single fact that his termination precluded him from vesting into

the ... Plan; he must demonstrate Continental's unlawful purpose in firing him.").

■ A plaintiff is not required to prove that the defendant's sole reason for terminating her was to interfere with her ERISA benefits, *Gavalik*, 812 F.2d at 851; *Seaman v. Arvida Realty Sales*, 985 F.2d 543, 546 (11th Cir.), *cert. denied*, 510 U.S. 916, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993), but only that the defendant's specific intent to inhibit her from using her benefits was a motivating factor in the termination decision. *Gavalik*, 812 F.2d at 851; *Titsch*, 548 F.Supp. at 985. Thus, to prevail on her ERISA claim, Lindemann must show that her prior use of short term disability benefits was a motivating factor in Mobil's decision to terminate her.

■ A plaintiff can demonstrate the specific intent required under § 510 with either direct or circumstantial evidence. *Gavalik*, 812 F.2d at 852. Lindemann argues that the termination letter she received from Mobil is direct evidence of an ERISA violation because it states forthrightly that she was terminated for her absences, and it is undisputed that those absences were approved and excused uses of her benefits. Lindemann thus equates termination based on absences that happen to have involved the use of short term disability benefits with termination based on the use of benefits itself. As discussed below, however, the case law does not support Lindemann's assumption that these two things are the same. As Lindemann cannot point to any language in the termination letter suggesting a specific intent on Mobil's part to retaliate against her because of her use of short term disability benefits, as opposed to her absences, the letter does not demonstrate the specific retaliatory intent required under § 510.

■ A plaintiff who cannot point to direct evidence of discrimination may still demonstrate discriminatory intent through circumstantial evidence. One of the most common ways of presenting circumstantial evidence of discrimination is through the burden shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), and elucidated in *Texas*

*Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1980), and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993).[2] The Seventh Circuit applied this burden shifting analysis to an ERISA § 510 claim in *Grottkau v. Sky Climber, Inc.*, 79 F.3d 70, 73 (7th Cir.1996).

▮▮▮▮ Normally, the first step in the burden shifting analysis would be to examine the sufficiency of the plaintiff's prima facie case. Determining whether a plaintiff has established a prima facie case becomes unnecessary, however, where a defendant employer has advanced a legitimate, nondiscriminatory reason for its action. *See id.* (citing *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983)). Mobil contends that the undisputed reason it fired Lindemann—absenteeism—is a legitimate, non-discriminatory reason. The heart of Lindemann's argument is that, in this case, absenteeism is *not* a nondiscriminatory basis for termination, because all of her absences involved the use of short term disability benefits, and thus firing Lindemann for absenteeism illegally penalized her for the receipt of protected benefits. Unfortunately for Lindemann, the case law is squarely against her.

Courts have ruled that excessive absenteeism is a legitimate reason for terminating an employee. *See Kinkead v. Southwestern Bell Tel. Co.*, 49 F.3d 454, 456 (8th Cir.1995) (finding for the employer where it provided "overwhelming evidence of a legitimate, non-discriminatory reason for [the plaintiff's] termination, namely the excessive absenteeism

that predated her disability"); *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 881 (9th Cir.1989), *cert. denied*, 498 U.S. 814, 111 S.Ct. 53, 112 L.Ed.2d 28 (1990) (judgment entered for employer where employee produced no "evidence from which one could reasonably infer that his discharge was in reprisal for his prior use of sick leave benefits" rather than because of his absences); *Massie v. Indiana Gas Co.*, 752 F.Supp. 261, 271 (S.D.Ind.1990) (verdict for the employer where it "came forward with a largely undisputed, legitimate explanation for the termination of the plaintiff, that is, excessive absenteeism"); *Yerger v. Landis Mfg. Sys., Inc.*, CIV. A. No. 88–7694, 1989 WL 83617 at *6 (E.D.Pa. July 25, 1989) (judgment for employer where "[t]he evidence shows that the sole motivating factor in [its] decision to terminate plaintiff was his unpredictable absences and [his supervisor's] disenchantment with covering his duties"), *aff'd without op.*, 924 F.2d 1050 (3d Cir.1990).

Both parties identify *Kimbro* and *Massie* as being on point for this case, but they disagree in their interpretations of these cases. For reasons that are not clear to us, Lindemann interprets these cases as standing for the proposition that a termination based on absenteeism for which benefits were received is the same as a termination based on a desire to interfere with the use of benefits.[3] Mobil, on the other hand, interprets these cases as holding that an employer can terminate an employee for absenteeism so long as the employer is terminating the employee because of the absences themselves and not because benefits were received for the absences. Mobil's interpretation is clearly the correct one.

---

2. Other methods of proving discrimination with circumstantial evidence may include (1) evidence of "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn," or (2) evidence "whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic (pregnancy, sex, race, or whatever) on which an employer is forbidden to base a difference in treatment received systematically better treatment." *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir.1994) (citations omitted).

3. Lindemann believes that the legal principles applied in *Kimbro* and *Massie* are correct (and favorable to her), but that the facts are distinguishable because in those cases there was no direct evidence of the employer's discriminatory intent such as the termination letter that Lindemann received from Mobil. Lindemann contends that in both cases the court would have found for the employee had the employee produced *direct evidence such as hers.* As stated above, however, the termination letter is not direct evidence of Mobil's specific intent to violate ERISA. Therefore, Lindemann cannot distance herself from the holdings in *Kimbro* and *Massie.*

In *Kimbro,* the Ninth Circuit found that the plaintiff failed to show that "his prior use of sick leave benefits was the motivating force behind his discharge." *Kimbro,* 889 F.2d at 881. ARCO, the defendant in *Kimbro,* maintained an employee benefit plan and attendance policy very similar to Mobil's. *Id.* at 872. ARCO produced evidence that Kimbro was terminated for excessive absenteeism and tardiness, after being counseled twice and given a final warning letter. *Id.* at 872–73. The *Kimbro* court found that Kimbro failed to produce any evidence that he was terminated "in reprisal for his prior use of sick leave benefits" rather than because of his absences, although his absences were taken in accordance with ARCO's Sick Leave Plan. *Id.* at 881. *Kimbro* clearly refutes Lindemann's argument that an employer cannot terminate an employee for absenteeism when those absences are covered by the employer's sick leave benefit plan.

In *Massie,* the court went to considerable length to discuss whether any of the employer's decision-makers considered Massie's use of short term disability benefits *per se* when deciding to terminate her. *Massie,* 752 F.Supp. at 269–71. Each of the defendant's decision-makers testified that it was the plaintiff's absenteeism, and not her use of benefits, that led to the decision to terminate her. *Id.* The *Massie* court accordingly found that the employee had been terminated for excessive absenteeism and "not because she was collecting short term disability benefits." *Id.* at 270. Like *Kimbro,* the *Massie* court thus distinguished between terminating an employee for absenteeism, including absences for which she received short term disability benefits, and terminating an employee for collecting those benefits.

Although neither party cited *Yerger v. Landis Mfg. Sys., Inc.,* CIV. A. No. 88–7694, 1989 WL 83617 (E.D.Pa. July 25, 1989), *aff'd without op.,* 924 F.2d 1050 (3d Cir.1990), in support of its argument, this bench opinion appears to be similarly on point. In *Yerger,* the court found that although the plaintiff's absences were due to a disability and he had received benefits because of that disability, the sole reasons for his termination were his "unpredictable absences" and his supervisor's

"disenchantment with covering his duties." *Id.* at *6. Similarly, Mobil, in the termination letter, stated that Lindemann's absences had "an adverse effect on ... fellow workers who must work in your absence." Pl.'s Ex. 5. In *Yerger,* as here, no one from the employer expressed any concern over the plaintiff's use of medical or disability benefits. The court there concluded that the plaintiff failed to establish a prima facie case.

In *Kinkead,* the Eighth Circuit stated that § 510 of ERISA "does not prohibit firing an employee who becomes less productive because of an illness or disability." *Kinkead,* 49 F.3d at 457 (citations omitted). This principle applies here, where Lindemann's supervisor Lieb told her that Lieb really needed her at work, and that her absences were causing problems.

Finally, we note some parallels between this case and *Troupe v. May Dep't Stores Co.,* 20 F.3d 734 (7th Cir.1994). Although that case did not involve a § 510 claim, the Seventh Circuit's reasoning there is relevant here. In *Troupe,* the Seventh Circuit rejected the plaintiff's argument that she was terminated in violation of the Pregnancy Discrimination Act, stating that "[t]he Pregnancy Discrimination Act requires the employer to ignore an employee's pregnancy, but ... not her absence from work, unless the employer overlooks the comparable absences of nonpregnant employees." *Id.* at 738 (citations omitted). Similarly, in *Massie* the court stated that the plaintiff failed to prove that she would have been treated any differently if she had taken her absences without drawing disability benefits. *See Massie,* 752 F.Supp. at 270. Therefore, Massie had not shown that she was terminated for her use of paid sick leave benefits, but rather because she was absent. In the present case, there is no evidence that Mobil treated employees' absences that did *not* involve the use of benefits any differently than Lindemann's absences. To paraphrase *Troupe,* ERISA requires that Mobil ignore Lindemann's exercise of short term disability benefits, but not her absences.

In conclusion, Mobil has satisfied its burden of articulating a legitimate, nondiscriminatory reason for terminating Lindemann.

Courts have held that excessive absenteeism is a legitimate, nondiscriminatory reason for terminating an employee which is dispositive unless there is evidence that absenteeism is merely a pretext, and that the employer's real reason was to retaliate for use of benefits. Lindemann does not attempt to prove that Mobil's reason was pretextual; instead she relies on her legal argument that terminating an employee for absenteeism equates to discrimination when the absenteeism involved disability benefits. As shown in *Massie* and *Kimbro*, this argument fails because it ignores the requirement that a plaintiff demonstrate the employer's specific intent to interfere with ERISA benefits. Because Lindemann has offered no other support for her claim, we find that no reasonable jury could return a verdict for her.

### CONCLUSION

For the foregoing reasons, this Court grants Mobil's motion for summary judgment [16–1] and denies Lindemann's second motion for summary judgment [38–1]. The clerk is directed to enter judgment in favor of defendant Mobil Oil Company and against plaintiff Diane Lindemann.