Michelle LANGFORD, Victoria
Rutherford, and Joyce
Simmons, Plaintiffs,

v.

The COUNTY OF COOK and Sabrina
Allen, Defendants.

No. 96 C 3854.

United States District Court,
N.D. Illinois,
Eastern Division.

May 8, 1997.

Edward M. Fox, Alan J. Shefler, Shefler and Berger, Ltd., Chicago, IL, for Plaintiffs.

John Justin Murphy, Regina Worley Calabro, State's Attorney of Cook County, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiffs Michelle Langford, Victoria Rutherford and Joyce Simmons bring various claims stemming from the abrupt termination of their employment against defendants Sabrina Allen, their former supervisor, and the County of Cook, which operates the hospital where they worked. Their suit includes federal claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 (Count II), and 42 U.S.C. § 1983, alleging violations of their Fourteenth Amendment rights (Counts III–V); and state law claims for retaliatory discharge (Counts I and VI) and breach of contract (Count VII). The defendants have moved for dismissal of all counts pursuant to Federal Rule of Civil Procedure 12(b)(6).

### RELEVANT FACTS

The following facts are drawn from the allegations of the complaint, which we take as true for purposes of a motion to dismiss. *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir.1996). The plaintiffs, Langford, Rutherford, and Simmons, all worked for Provident Hospital, which is owned and operated by defendant Cook County, at various times between 1993 and early 1996. Their supervisor was defendant Sabrina Allen, the Director of Information Systems for Provident.

Langford was hired in August, 1993. At some point thereafter, she alleges that Allen began to harass her. In February, 1995, Langford filed a worker's compensation claim for mental injury related to the stress she was encountering on the job. In September, 1995, Langford took disability leave and filed a claim for disability benefits. Langford's doctor approved her return to work in January, 1996, with the condition that she not work under Allen. Provident did not place her in any other position or permit her to return to work. In April, 1996, Langford was expressly fired.

Rutherford was hired in May, 1993. She, too, alleges that at an unspecified point Allen begin to harass her unjustifiably. In September, 1995, Rutherford filed a claim for disability benefits and took disability leave. Her doctor permitted her to return to work in December, 1995, so long as she did not work under Allen. Nevertheless, Rutherford was not reassigned and was eventually notified in May, 1996 that she had been terminated. Rutherford and Langford received right-to-sue letters from the EEOC on May 21, 1996.

Simmons was hired in June, 1995. Her job responsibilities included data processing and troubleshooting software and hardware problems. Soon after she was hired, she raised questions about the legality of Provident's use of bootlegged or pirated software. After raising these questions, Simmons was unjustifiably harassed by Allen. As a result of the stress caused by this harassment, Simmons filed a worker's compensation claim for mental injury and took disability leave in July, 1995. In October, her doctor approved her return to work so long as the work was limited to light duty. Simmons alleges that thereafter Provident and Allen took away her job responsibilities. She was fired on December 1, 1995.

All of the plaintiffs make substantially similar allegations regarding the nature of their employment relation with Provident. The plaintiffs allege that their employment contracts were partly written and partly oral, and that they were "modified by Provident's policies, procedures and actions" over time. The contracts were not for at-will employment, but rather expressly provided that any discipline, up to and including discharge, must be imposed in a progressive stages, and must be for just cause. Moreover, the contracts provided that the plaintiffs would be

employed by Provident so long as they performed reasonably and satisfactorily, and the plaintiffs received specific assurances to the same effect. Each of the plaintiffs alleges that she nevertheless was terminated without just cause.

The plaintiffs filed separate suits, which were consolidated by this Court. The defendants have moved to dismiss all claims.

## LEGAL STANDARDS

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir.1989). When considering a motion to dismiss, the court views all facts alleged in the complaint, as well as any inferences reasonably drawn therefrom, in the light most favorable to the plaintiff. *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir.1996). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The complaint need not identify a legal theory, and even "specifying an incorrect theory is not fatal." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir.1992). The only question is "whether relief is possible under any set of facts that could be established consistent with the allegations." *Id.* (citing *Conley v. Gibson*, 355 U.S. at 45–46, 78 S.Ct. at 101–02).

## ANALYSIS

We first review plaintiffs Langford's and Rutherford's ADA claims (Count II). We then take up the plaintiffs' various § 1983 claims, which include due process claims against defendant Allen (Count III) and defendant Cook County (Count IV), and equal protection claims against Allen (Count V). Last, we examine the plaintiffs' state law claims for retaliatory discharge (Counts I and VI) and breach of contract (Count VII).

### Count II: Discrimination under the American with Disabilities Act

Count II, directed only to defendant Cook County, alleges that the terminations of Langford and Rutherford constituted discrimination under the Americans with Disabilities Act (ADA). Langford and Rutherford allege that they both had a known disability and were qualified to perform their positions with reasonable accommodations. The defendants argue that the plaintiffs have not alleged that they are disabled within the meaning of the ADA.

The ADA makes it unlawful for an employer to "discriminate against a qualified individual with a disability because of the disability . . . in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To prevail on a claim for disability discrimination, the plaintiff must establish "(1) that she is a disabled person within the meaning of the ADA; (2) that she is qualified, that is with or without reasonable accommodation (which she must describe), she is able to perform the essential functions of the job; and (3) that she suffered an adverse employment action because of her disability." *Weiler v. Household Fin. Corp.*, No. 93 C 6454, 1995 WL 452977 at *3, 1995 U.S.Dist. LEXIS 10566 at *7–8 (N.D.Ill. July 27, 1995), *aff'd*, 101 F.3d 519 (7th Cir. 1996); *see also Byrne v. Board of Educ.*, 979 F.2d 560, 563 (7th Cir.1992).

Rutherford and Langford allege in general terms all the requirements of disability discrimination under the ADA. More specifically, they allege that the nature of their disability is that they suffer from a stress related disability that limits their ability to work under a specific supervisor, defendant Allen. These more specific allegations regarding their claimed disability override their general allegations and support the defendants' argument that the "disability" they describe is not a disability covered by the ADA. Plaintiffs usually need not plead specific facts under the notice pleading requirements of Federal Rule of Civil Procedure 8(a). However, "if a plaintiff does plead

**1096**

particulars, and they show that [she] has no claim," then she has pled herself out of court. *Thomas v. Farley,* 31 F.3d 557, 558 (7th Cir.1994).

A plaintiff is disabled within the meaning of the ADA if she has "a physical or mental impairment that substantially limits one or more of [her] major life activities." 42 U.S.C. § 12102(2)(A). The defendants argue that Rutherford and Langford have failed to allege that their mental impairment "substantially limits one or more or [their] major life activities." The term "major life activities" is not defined by the ADA. Instead, courts look to the definition of this term provided in the regulations issued to implement Title 1 of the ADA, 29 C.F.R. pt. 1630, which in turn refer to the Rehabilitation Act regulations, 34 C.F.R. § 104. *See Bolton v. Scrivner, Inc.,* 36 F.3d 939, 942 (10th Cir. 1994). The Rehabilitation Act regulations define "major life activities" to include:

> caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. This list is not exhaustive. For example, other major life activities include, but are not limited to, sitting, standing, lifting, reaching.

29 C.F.R. pt. 1630 app., § 1630.2(i).

█ The plaintiffs allege that they were able to work but only under a different supervisor. The Seventh Circuit has held, however, that this type of restriction does not "substantially limit" the "major life activity" of work. "The major life activity of working is not 'substantially limited' if a plaintiff merely cannot work under a certain supervisor because of anxiety and stress.... " *Weiler v. Household Fin. Corp.,* 101 F.3d 519, 524 (7th Cir.1996); *see also Palmer v. Circuit Court,* 905 F.Supp. 499, 507 (N.D.Ill.1995) (plaintiff was not disabled within the meaning of the ADA because she had a personality conflict with supervisor that caused her to suffer severe anxiety and depression). The complaint does not allege that they are disabled from any other major life function, either. Thus, the plaintiffs have not alleged that they are dis-

abled within the meaning of the ADA. We dismiss Count II of the Second Amended Consolidated Complaint.

*Count III: § 1983 Due Process Claims against Allen in her Individual and Official Capacities*

Count III alleges that the defendant Allen deprived the plaintiffs of their property interests in their employment, in violation of the Due Process Clause of the Fourteenth Amendment. The plaintiffs allege that their terminations violated both the substantive and procedural aspects of due process, although the content of their substantive due process claim is far from clear.[1] The defendants initially assume that Allen is being sued in her official capacity only and attack the adequacy of the pleading on that ground, but they also raise some arguments in the event that she is also being sued as an individual. We examine whether the Allen is being sued in her official capacity or her individual capacity, whether the plaintiffs adequately pled a cause of action against Allen in her individual capacity under 42 U.S.C. § 1983, and whether the plaintiffs adequately pled a cause of action against Allen in her official capacity under 42 U.S.C. § 1983.

█ It is unclear from the complaint whether Allen is being sued in her official or individual capacity. The defendants argue that the 42 U.S.C. § 1983 claims against Allen are brought against her in her official capacity only because the plaintiffs do not specify whether they are suing the defendant Allen in her official or individual capacity. In *Kolar v. County of Sangamon,* 756 F.2d 564, 568 (7th Cir.1985), the Seventh Circuit "created a presumption that a section 1983 suit against a public official is an official-capacity suit. While the *Kolar* presumption is a useful tool to aid judges, it is not conclusive. A court must also consider the manner in which the parties have treated the suit." *Conner v. Reinhard,* 847 F.2d 384, 394 n. 8 (7th Cir.1988) (citations omitted).

1. The complaint also states that the terminations violated the plaintiffs' First Amendment rights. The defendants have not challenged this claim, and so we will let it stand for now, although nothing in the complaint appears to support such a claim.

■ We can infer that the plaintiff is being sued in her official capacity because the plaintiffs allege that she is the appointed and acting Director of Information Systems and was at all times acting under color of state law as employee, agent and representative of the defendant Cook County. We can also infer that Allen is being sued in her individual capacity. The claim against Allen involves her individual actions in terminating the plaintiffs and seeks punitive damages from only Allen. *See Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981) (municipal defendants, unlike individual defendants, are immune from liability under § 1983 for punitive damages). Moreover, if the "complaint alleges the tortious conduct of an individual acting under color of state law, an individual capacity suit plainly lies, even if the plaintiff failed to spell out the defendant's capacity in the complaint." *Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir.1991). Under this standard, the plaintiffs sufficiently allege that Allen is being sued in both her individual and official capacities.

■ The Court now turns to the issue of whether the plaintiffs adequately pled a cause of action against Allen in her individual capacity under 42 U.S.C. § 1983. Only two allegations are required to state a cause of action against a person in her individual capacity under 42 U.S.C. § 1983: the plaintiffs must allege that they were deprived of a constitutionally protected right, and that the person who has deprived them of that right acted under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980). The plaintiffs have alleged that they were deprived of substantive and procedural due process because they had a protected property interest in their jobs and were summarily deprived of that property interest when they were terminated without just cause. The plaintiffs have also alleged that Allen was acting under color of state law at all material times. The plaintiffs have adequately pled the two required elements to state a cause of action against Allen as an individual under 42 U.S.C. § 1983.

■ Official capacity suits are another way of pleading an action against a government entity for which the officer works. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985). The plaintiffs must allege (1) a deprivation of a constitutionally protected interest and (2) that the deprivation was caused by a official policy or custom of the municipality. *Monell v. Department of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). The second requirement of *Monell* is at issue in this case.

The caselaw has identified three instances in which a municipality can be said to have violated the civil rights of a person because of its policy: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law' "; or (3) an allegation that the constitutional injury was caused by a person with "final policy-making authority."

*Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734–35 (7th Cir.1994) (citations omitted).

■ The defendants argue that the plaintiffs have failed to allege a municipal custom. In order to demonstrate a municipal custom, the plaintiffs must allege a pattern of constitutional violations by the municipality. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985); *see also Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985).

In this instance, the plaintiffs do not specifically allege that there was a municipal custom. Instead, the plaintiffs allege that there was a policy that they could only be fired for just cause, and that the defendants did not follow this policy when terminating them, thus depriving them of substantive and procedural due process rights. As the complaint alleges that the defendants engaged in this same course of conduct with respect to

each plaintiff, it alleges three instances of this claimed deprivation. Drawing all reasonable inferences in favor of the plaintiffs, as we must do on a motion to dismiss, we find that these three instances reasonably imply the existence of a municipal custom of not adhering to its stated policies.[2] At this point we therefore deny the defendants' motion to dismiss with respect to Count III.

### Counts IV and V: Remaining § 1983 Claims

■ Count IV alleges that defendant Cook County deprived the plaintiffs of their property interests in their employment, in violation of the Fourteenth Amendment. The plaintiffs also allege that Cook County engaged in a municipal custom that was a moving force behind the constitutional violations. As noted above, a suit against a public official in her official capacity is the same as a suit against the governmental entity for which she works. *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985). Thus, Count IV is simply another iteration of the official-capacity suit against Allen in Count III. Count V alleges that defendant Allen deprived the plaintiffs of equal protection in violation of the Fourteenth Amendment because similarly situated individuals who did not file worker's compensation claims, disability claims or make complaints regarding the unauthorized activities of their employer were not terminated.

In opposition to Counts IV and V, the defendants raise only the same *Monell* municipal policy or custom arguments discussed above in relation to Count III. We reject the defendants' arguments for the reasons stated

above. We deny the defendants' motion to dismiss Counts IV and V.

### Counts I and VI: State Law Claims for Retaliatory Discharge

Count I alleges that Langford was fired in retaliation for filing a worker's compensation claim and for filing an application for disability benefits, and that Rutherford was fired in retaliation for filing an application for disability benefits. Count VI alleges that Simmons was fired in retaliation for filing a worker's compensation claim and for reporting the unauthorized use of software by her employer. The defendants argue that Langford's and Rutherford's claims of being fired in retaliation for filing disability benefits do not fall into the recognized public policy exceptions for a retaliatory discharge cause of action in Illinois. The defendants also argue that Simmons' claim fails to show a causal connection between the filing of her worker's compensation claim and her termination.

■ It is well established law in Illinois that absent an express employment contract stating otherwise, an employee is terminable "at will" for any reason or no reason. *Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 128, 52 Ill.Dec. 13, 15, 421 N.E.2d 876, 878 (1981). Nevertheless, a plaintiff may have a tort cause of action for retaliatory discharge under Illinois law if the employer has discharged the employee in retaliation for the employee's activities, and the discharge was "in contravention of a clearly mandated public policy." *Id.,* 85 Ill.2d at 134, 52 Ill.Dec. at 18, 421 N.E.2d at 881.

■ In order to adequately plead a cause of action for retaliatory discharge, a plaintiff must allege a causal relationship be-

---

**2.** Because we find that a municipal custom may be inferred from the allegations of the complaint, we do not reach the defendants' alternative argument that the plaintiffs failed to allege that Allen was a final policymaker. "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered," *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986), and a complaint must adequately allege that the defendant is the final policymaker. *Baxter v. Vigo County Sch. Corp.,* 26 F.3d at 735. The plaintiffs allege that Allen was the Director of Information Systems,

the unit in which they worked, and that she was their supervisor. Generally, a supervisor, especially the director of a unit, is responsible for day to day decisions for that unit, including the hiring and firing of employees. Thus, we find it reasonable to infer that Allen is a final policymaker under the present allegations. And, because the plaintiffs have sufficiently alleged that Allen herself directed their terminations, their complaint (at least at this stage) does not suffer from the causation defects noted by the Supreme Court in their recent opinion, *Board of County Commissioners v. Brown,* —— U.S. ——, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

tween her activities as an employee and her discharge, and that the discharge was in contravention of public policy. *Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill.2d 526, 529, 116 Ill.Dec. 694, 696, 519 N.E.2d 909, 911 (1988). The first element of a cause of action for retaliatory discharge is the causal relationship between the employee's activities and the discharge. In the cases presently before us, the plaintiffs' complaint describes the events leading up to their individual discharges. The plaintiffs were employed by Cook County at Provident Hospital, and they allege that they performed all duties and responsibilities required by their employment. Langford filed a worker's compensation claim and an application for disability benefits. Simmons filed a worker's compensation claim and an application for disability benefits, and also complained to her supervisor regarding the unauthorized use of software by her employer. Rutherford filed an application for disability benefits. The plaintiffs each went on disability leave and afterwards they were each terminated. The plaintiffs allege that their terminations were in retaliation for their aforementioned actions. The complaint on its face thus alleges a causal link, as required.

The defendants contend that Simmons' claim is defective because she failed to allege a causal connection between the filing of her worker's compensation claim and her termination: the complaint suggests that she was terminated over four months after the filing of her worker's compensation claim. The defendants do not cite any case law that requires less than four months between the filing of the worker's compensation claim and the termination to show a causal connection. The Court has not found any cases that even suggest such a proposition. The plaintiff need not allege a timing element to adequately plead the first element of retaliatory discharge. All that is required is that the plaintiffs' complaint reasonably informs the defendants of the plaintiffs' claim including the alleged causal connection. Simmons alleges that she was fired partly in retaliation for filing her worker's compensation claim. She thus has sufficiently pled the first element of retaliatory discharge.

The second element of a cause of action for retaliatory discharge requires the plaintiff to allege that the discharge was "in contravention of a clearly mandated public policy." *Palmateer*, 85 Ill.2d at 134, 52 Ill.Dec. at 18, 421 N.E.2d at 881. The type of public policy that will support a claim for retaliatory discharge has been broadly defined as those matters that "strike at the heart of a citizen's social rights, duties and responsibilities." *Id.*, 85 Ill.2d at 130, 52 Ill.Dec. at 15–16, 421 N.E.2d at 878–79.

In practice, recent Illinois cases have limited the retaliatory discharge cause of action to two situations: retaliation for filing a worker's compensation claim and retaliation for reporting illegal conduct. *See Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 181, 23 Ill.Dec. 559, 563, 384 N.E.2d 353, 357 (1978) (establishing worker's compensation exception); *Palmateer*, 85 Ill.2d at 133, 52 Ill.Dec. at 17, 421 N.E.2d at 880 (establishing criminal investigation/whistleblowing exception); *see also Lambert v. City of Lake Forest*, 186 Ill.App.3d 937, 941–42, 134 Ill.Dec. 709, 712, 542 N.E.2d 1216, 1219 (2d Dist.1989) (retaliatory discharge limited to these two exceptions); *Abrams v. Echlin Corp.*, 174 Ill. App.3d 434, 443, 123 Ill.Dec. 884, 890, 528 N.E.2d 429, 435 (1st Dist.1988) (same).

Langford and Simmons allege that they were terminated after they filed worker's compensations claims. Their allegations fall into the worker's compensation exception recognized in *Kelsay* and upheld thereafter. Langford and Simmons thus have adequately pled both elements for the tort of retaliatory discharge. We deny the defendants' motion to dismiss Langford's and Simmons' retaliatory discharge claims in Counts I and VI.

██ Rutherford does not allege that she filed a worker's compensation claim. She alleges only that she filed a claim for disability benefits and that she was fired in retaliation for that claim. The defendants argue that this situation does not fall within the recognized public policy exception for worker's compensation claims.

██ Rutherford first attempts to overcome this deficiency by stating in her response brief that she was fired in retaliation

for filing a worker's compensation claim. This attempt must fail. "[T]he plaintiff cannot cure [a] deficiency [in her complaint] by inserting the missing allegations in a document that is not either a complaint or an amendment to a complaint." *Harrell v. United States,* 13 F.3d 232, 236 (7th Cir. 1993). Rutherford can not here use her response brief to allege new facts that include an essential element of her claim. She must instead file an amended complaint containing the allegation.

Rutherford next argues that being fired in retaliation for filing a disability claim contravenes Illinois public policy so as to be an exception to "at will" employment. Filing a disability claim does not automatically fall into the two well established public policy exceptions recognized by Illinois courts: retaliation for filing a worker's compensation claim or retaliation for reporting illegal conduct.

> When asked to further expand the scope of the tort action beyond Workers' Compensation and "whistle-blower" related charges, ... our supreme court has drawn the line and denied plaintiffs' retaliatory discharge causes of action. Likewise our appellate court has refused to countenance an expansion of the tort by denying claims of retaliatory discharge brought on grounds outside of those approved in *Kelsay* and *Palmateer.*

*Mitchell v. Deal,* 241 Ill.App.3d 331, 333–34, 182 Ill.Dec. 75, 76, 609 N.E.2d 378, 379 (3d Dist.1993) (collecting cases) (citations omitted). This Court is bound to honor the determination of Illinois to limit public policy exceptions to the at-will doctrine to those already identified in *Kelsay* and *Palmateer.* See *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

Although Rutherford urges that a disability claim is similar enough to a workers' compensation claim that it should fall within the *Kelsay* exception, a close look at the two types of actions fails to support such a comparison. The Illinois legislature "enacted the workmen's compensation law as a compre-hensive scheme to provide for efficient and expeditious remedies for injured employees." *Kelsay,* 74 Ill.2d at 181–82, 23 Ill.Dec. at 563, 384 N.E.2d at 357. With the passage of the Act, the employee gave up right to sue in tort under the common law. *Id.,* 74 Ill.2d at 180, 23 Ill.Dec. at 562, 384 N.E.2d at 356. The Illinois supreme court found that "[t]his scheme would be seriously undermined if employers were permitted to abuse their power to terminate by threatening to discharge employees for seeking compensation under the Act." *Id.,* 74 Ill.2d at 182, 23 Ill.Dec. at 563, 384 N.E.2d at 357. With the threat of a possible discharge looming over their heads, many employees would decide not to pursue their legal rights under the Act, and therefore would be left with no legal recourse under either common law or statute. *Id.* Permitting employers to be relieved of their responsibility under the Act by threatening employees with discharge for filing claims would directly contravene public policy. *Id.*

In contrast, the common source of disability benefits is an employers' insurance policy. No statutory scheme, or trade-off between liability and compensatory damages, is implicated by a private insurance policy.[3] We note that there is some language in *Hinthorn v. Roland's of Bloomington, Inc.,* 119 Ill.2d 526, 533–34, 116 Ill.Dec. 694, 698, 519 N.E.2d 909, 913 (1988) that generally supports a broad reading of the worker's compensation exception established in *Kelsay* to protect a worker seeking medical attention for a work-related injury from retaliatory discharge, even if she has not yet filed a worker's compensation claim. The Seventh Circuit likewise has read this language as permitting a retaliatory discharge claim by workers who are fired for seeking medical attention. *Washburn v. IBP, Inc.,* 910 F.2d 372, 373 (7th Cir.1990). Rutherford alleges something different, however: that she was fired not for seeking medical attention, but for filing a claim for disability benefits. Unlike worker's compensation benefits, disability benefits generally seek to replace a portion

---

**3.** Under some circumstances, terminating an employee in retaliation for the employee's use of benefits may be prohibited by ERISA. See *Linde-* *mann v. Mobil Oil Corp.,* 940 F.Supp. 189 (N.D.Ill.1996).

of the income lost during an unpaid disability leave, not to directly pay for medical treatment.

In the case before us, it is impossible to determine if Rutherford's filing a claim for disability benefits is similar enough to filing worker's compensation claims to constitute a similar contravention of public policy under *Kelsay* and *Hinthorn*. The complaint does not state what kind of disability claims were filed, from whom they were seeking compensation, and if there is any statutory scheme involved. While a complaint need contain only a "short plain statement of the claim showing that the pleader is entitled to relief," FED.R.CIV.P. 8(a), the plaintiffs' allegations regarding their disability claims do not meet this standard. Accordingly, this Court finds that plaintiff Rutherford has not adequately stated a claim of retaliatory discharge under Illinois law, and her claims contained in Count I must be dismissed without prejudice.

■ Finally, plaintiff Simmons alleges that, in addition to coming within the worker's compensation exception to at will employment, she also comes within the crime prevention/whistleblowing exception, because she was fired partly in retaliation for reporting her employer's piracy of computer software to her supervisor. Although the Court need not address this issue because Simmons has adequately pled retaliatory discharge based on her worker's compensation claim, the Court will review the arguments to determine whether Simmons has an alternate basis for her retaliatory discharge claim.

The issue here is whether Simmons' report that her employer was pirating software falls into the crime prevention/whistleblowing exception to at-will employment established by *Palmateer*, 85 Ill.2d at 133, 52 Ill.Dec. at 17, 421 N.E.2d at 880 (1981). Piracy is, in essence, the theft of software royalties from those who are entitled to them. Theft is a crime in Illinois. 720 ILCS 5/16–1 (1996). "There is no public policy more basic ... than the enforcement of a State's criminal code." *Palmateer*, 85 Ill.2d at 132, 52 Ill. Dec. at 16, 421 N.E.2d at 879. There is no question that public policy favors the exposure of a crime. *Id.*, 85 Ill.2d at 132, 52 Ill.Dec. at 17, 421 N.E.2d at 880. Individuals

should be able to report what they believe to be a crime without fear of retaliation by their employer. *Id.*, 85 Ill.2d at 132–33, 52 Ill.Dec. at 17, 421 N.E.2d at 880.

Illinois courts have recognized a retaliatory discharge claim based on the "whistleblowing" exception in a variety of circumstances. For example, in *Palmateer*, the employee was fired for supplying information to local law enforcement authorities that another employee of company might be in violation of the criminal code, for agreeing to gather further information, and for intending to testify at the employee's trial. *Id.*, 85 Ill.2d at 132, 52 Ill.Dec. at 16, 421 N.E.2d at 879. The supreme court upheld a cause of action for retaliatory discharge. Illinois courts have also upheld an employee's cause of action when the employee reported to his supervisors that certain accounting practices resulted in the overstatement of income and were in violation of federal securities law, *Johnson v. World Color Press, Inc.*, 147 Ill. App.3d 746, 101 Ill.Dec. 251, 498 N.E.2d 575 (5th Dist.1986), and when the employee reported the possible embezzlement of corporate funds to the company president. *Petrik v. Monarch Printing Corp.*, 111 Ill.App.3d 502, 67 Ill.Dec. 352, 444 N.E.2d 588 (1st Dist.1982).

However, there are also cases where retaliatory discharge claims have not been allowed for actions that resemble "whistleblowing." *See e.g., Long v. Commercial Carriers, Inc.*, 57 F.3d 592, 596 (7th Cir.1995) (reporting violation of federal regulations dealing with "noncrucial financial and contractual interests" did not rise to level necessary for a retaliatory discharge claim); *Gould v. Campbell's Ambulance Service*, 111 Ill.2d 54, 94 Ill.Dec. 746, 488 N.E.2d 993 (1986) (employee terminated after reporting that a co-employer was not certified pursuant to a city ordinance); *Lambert v. City of Lake Forest*, 186 Ill.App.3d 937, 134 Ill.Dec. 709, 542 N.E.2d 1216 (1989) (employee discharged for refusing to keep silent during an internal investigation by the city). In none of these cases did the court find that the public policy concerns behind the whistleblowing exception were present.

After reviewing the relevant case law, we conclude that the allegations relating to improper software use state a claim that could fall within the whistleblowing exception. Thus, Simmons' allegations that the defendants fired her in retaliation for reporting software piracy by her employer to her supervisor provide an alternate basis for her retaliatory discharge claim.

In sum, the defendants' motion to dismiss Count I is denied as to Langford and granted as to Rutherford. The motion to dismiss Count VI, which contains Simmons' claim, is denied.

### Count VII: State Law Claim for Breach of Contract

In Count VII, the plaintiffs claim that the defendants' actions in terminating them breached their contracts of employment. The plaintiffs allege that they entered into employment contracts with the defendants between August 1993 and June 1995. They allege that the contracts were partly oral and partly written, and that eventually the contracts were supplemented and amended by the defendants' policies, procedures and actions, specifically the employee policy manual. The plaintiffs allege that they were not at-will employees, and that the defendants' policies expressly provided that any discipline including discharge must be implemented progressively and could only be for just cause.

The defendants argue that the plaintiffs have failed to sufficiently allege an enforceable contract, because the plaintiffs have not alleged the time, duration or other conditions of employment, the express contract provisions which were violated, or the persons who made the oral promises. In addition, the plaintiffs have failed to attach a copy of the policy manual to the complaint. The defendants contend that their alleged statements of policy, written and oral, do not add up to a clear promise not to terminate except for just cause.

We first consider the plaintiffs' failure to attach a copy of the policy manual on which the alleged contract is based to their complaint. In federal court, "[a] plaintiff is under no obligation to attach to her complaint documents upon which her action is based, but a defendant may introduce certain pertinent documents if the plaintiff failed to do so." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). In the case before us, neither party has seen fit to attach any policy manual, or for that matter, any other evidence of the plaintiffs' alleged employment contracts. In the event that the Court actually had a copy of the policy manual to review, we could look beyond the face of the complaint to determine whether the contract indeed contained the alleged promises.[4] Instead, we are limited to the allegations set forth in the complaint in reviewing the validity of the claim. *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir.1996). Looking solely to those allegations, we consider whether the plaintiffs have adequately alleged an enforceable contract.

In Illinois, there is a presumption that employees who are hired without a fixed term are employees at will. *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill.2d 482, 489, 106 Ill.Dec. 8, 12, 505 N.E.2d 314, 318 (1987). A party may overcome this presumption if she can show that she contracted otherwise. *Id.* The Illinois supreme court has held that "an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present." *Id.*, 115 Ill.2d at 490, 106 Ill.Dec. at 12, 505 N.E.2d at 318. There are three requirements to demonstrate an enforceable contract between an employer and an employee: "First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in

---

4. Although it was not attached to the complaint, in this case the Court could properly consider the defendants' policy statement or handbook without converting the motion to dismiss into a motion for summary judgment. Documents that are referred to in the complaint and are central to the plaintiffs' claim are treated as part of the pleadings. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993).

such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by continuing to work after learning of the policy statement." *Id.*

According to the first requirement of *Duldulao*, the plaintiffs must establish that there was a clear promise. If we could, we would look to the language of the policy manual to determine if a clear promise was made. Lacking a copy of the actual policy manual, the Court looks to the allegations of the complaint describing the promises that were made. "[A]n employee handbook or similar document creates enforceable contractual rights only when specific procedures have been prescribed by positive and mandatory language." *Doe v. First Nat'l Bank,* 865 F.2d 864, 872 (7th Cir.1989). An employee handbook or policy document does not create an enforceable contract when the handbook or policy contains discretionary language. *St. Peters v. Shell Oil Co.,* 77 F.3d 184, 188 (7th Cir.1996). In the case before us, the plaintiffs allege that the defendants' written policies expressly provided that any discipline including discharge must be implemented progressively and could only be for just cause. Taking their allegations as true, the plaintiffs have met the first of *Duldulao* requirement that they allege "specific procedures" for disciplining and terminating employees "prescribed by positive and mandatory language."

The defendants argue that the collective effect of the oral and written statements does not add up to a clear promise, and that the plaintiffs fail to identify the declarant of the oral contract. A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). All that is required under *Duldulao* is that the plaintiffs allege that there was a promise based on the written policy manual to withstand a motion to dismiss. The plaintiffs' allegations meet this standard. The issue of whether there were also oral promises regarding employment is irrelevant in this particular case to the complaint's sufficiency, and would be better determined on a summary judgment motion or at trial.

The second element of *Duldulao* requires the plaintiffs to allege that the policy manual was disseminated to them in such a manner that they were aware of the its contents and could reasonably believe it to be an offer. The plaintiffs do not explicitly allege in their complaint how, where or when the policy manual was disseminated to them. Yet, when considering a motion to dismiss, the court views all facts alleged in the complaint, as well as any inferences reasonably drawn therefrom, in the light most favorable to the plaintiff. *Doherty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir.1996). Because the plaintiffs allege that a policy manual existed and generally describe its contents, it can reasonably be inferred that a manual was disseminated to the plaintiffs in some manner, and the plaintiffs knew of its contents. Therefore, they have met the second requirement of *Duldulao.*

Finally, the third part of the *Duldulao* test requires the employee's acceptance of the offer. Once again, the plaintiffs do not expressly allege that they continued working after learning of the defendants' policies regarding progressive disciplinary procedures and discharge for just cause, but again, it is reasonable to infer this from the existing allegations. The plaintiffs thus successfully meet the third requirement of *Duldulao.*

The plaintiffs' allegations sufficiently meet the three requirements of *Duldulao.* They need do no more. We deny the motion to dismiss Count VII.

## CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part the defendants' motion to dismiss the Second Amended Consolidated Complaint. The motion is granted as to Rutherford's claims in Count I, which are dismissed without prejudice, and as to Count II in its entirety, which is dismissed with prejudice. The motion is denied as to Langford's claims in Count I, and as to all remaining claims.